## AYLWARD v. STATE.    (4 Div. 322.)

Supreme Court of Alabama.    May 19, 1927.

1. **Criminal law ⚖═327—No conviction can be had on evidence showing no concerted action, but only that one of defendants jointly or separately tried must have committed crime.**

If two persons are put on trial for a crime as to which the evidence affords no reasonable inference that the criminal act was done in co-operation by the two, the state assumes the burden of fastening the guilt upon one or the other, and no conviction can be had on the ground that one of them must have been guilty, which rule applies though the same defendants be tried separately.

2. **Criminal law ⚖═778(1)—In prosecution under indictment jointly charging defendant and son, evidence held to require instruction on state's burden of fastening guilt on particular defendant.**

In prosecution for murder under indictment jointly charging defendant and her son, evidence tending to show that deceased was killed by shots fired from defendant's rear porch, and evidence of finding of pistol in flour can in defendant's house and empty shells near back porch *held* to require instruction on state's burden of fastening guilt on one or the other of defendants, such evidence being insufficient to warrant inference that they acted together.

3. **Criminal law ⚖═459—Witnesses testifying to examination of bullet hole in wall should have been permitted to testify as to their judgment of direction from which bullet came.**

In prosecution for murder, where there was evidence that three shots were fired from

the dark, killing deceased, and that one of bullets was found embedded in wooden building near to which deceased was standing, *held* witnesses testifying to having examined hole from which bullet was removed should have been permitted to state their judgment as to the direction from which the bullet came, the matter being one of common observation, the subject-matter of which could not be reproduced or described precisely to jury.

**4. Criminal law ⚷459—Opinion as to direction whence death missile came proper only if subject-matter cannot be reproduced or described and facts are capable of being understood by men in general.**

A witness may be permitted to express an opinion as to direction whence came missile inflicting fatal wound only if subject-matter to which the testimony relates cannot be reproduced or precisely described to jury as it appeared to witness, and then only if facts on which witness bases his opinion are such as men in general are capable of comprehending and understanding.

**5. Criminal law ⚷925(5)—Sheriff's conversation with juror urging desirability of agreement held alone ground for new trial.**

Sheriff's calling of one of jurors aside and urging on him the desirability of an agreement, followed shortly by a verdict inflicting heavier punishment than juror had previously been willing to agree to, *held* alone ground for new trial.

**6. Criminal law ⚷1163(6)—Prosecution has burden of showing that improper conversation between juror and sheriff not harmful.**

Defendant having shown private conversation between sheriff and juror, burden was on prosecution of satisfactory showing that conversation was innocuous and did not affect verdict.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Annie C. Aylward was convicted of murder in the second degree, and she appeals. Reversed and remanded.

Mulkey & Mulkey, of Geneva, for appellant.

There was no evidence of a conspiracy or concert of action between Westfall and his mother, and the act or declaration of the former with respect to possession of a pistol, made prior to the killing, was not admissible as against the latter. Smith v. State, 209 Ala. 666, 96 So. 779; Tolbert v. State, 87 Ala. 27, 6 So. 284; Evans v. State, 109 Ala. 11, 19 So. 535. The defendant should have had the affirmative charge. Pickens v. State, 115 Ala. 42, 22 So. 551; Gilmore v. State, 99 Ala. 154, 13 So. 536. The action of the sheriff in talking to one of the jurors constituted ground for a new trial.

Charlie C. McCall, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAYRE, J. Defendant (appellant) was jointly indicted with Westfall Aylward, her son, for the murder of Buford Austin. A severance having been ordered, the court proceeded to try this defendant alone, with result that the jury returned a verdict of guilty of murder in the second degree and sentence was pronounced accordingly.

Deceased, 17 years of age, and three companions of about the same age were standing in front of the Methodist Church at Black, engaged in conversation in an ordinary tone. The time was about 9 o'clock p. m. The night was clear, but moonless. Defendant, 58 years of age, lived with her son and codefendant, Westfall, 24 years of age in a dwelling something more than 200 feet east of the church. The intervening space was open and free of obstructions save the wire fence on two sides of defendant's intervening cow pasture. Three shots in quick succession were heard; a bullet passed through the neck of deceased inflicting a mortal wound of which he died in a few minutes. Evidence for the state tended to show that the flashes of the three shots were seen to proceed from a direction and a distance which would locate them upon the back porch of defendant's dwelling house. Defendant and her son were at home at the time—that is, they were found there very shortly after the shooting—but the house was dark. Defendant, testifying in her own behalf and denying any knowledge of the occurrence, said that she had retired for the night. She was not asked to say anything concerning her son, nor did he appear as a witness. Upon demand of the officers, defendant and her son produced a revolver of old type and a shotgun as being all the firearms in their possession. Next morning, defendant and her son having been in custody in the meantime, officers searching the premises found in a large can nearly filled with flour, and near the bottom of the can, an automatic pistol, and a week or more afterwards a girl of 13 found near the garden fence, and about 18 feet, as she stated, from the back porch, three empty shells of the same caliber as the automatic weapon. A steel-jacketed bullet of the same caliber was found embedded in the front of the church about three feet above the ground. The old type revolver was of like caliber, but there was evidence going to show that the shells and the steel-jacketed bullet could be used only in an automatic revolver of the caliber of the weapon found in the flour can. Defendant testified that she had owned an automatic, but that she had lost it on a trip to Florida taken a few weeks before—in an automobile, as we infer—and, testifying at the trial, she said she had poured a sack of flour into the can without knowledge of the fact that the pistol was there. She said that she could account

for its being there on the hypothesis only that it had been accidentally dropped out of the bag in which she carried it into the can in which she had taken some eggs to Florida for sale, a part of which she had bartered for a sack of flour.

Instructing the jury as to the law of felonious homicide, the court defined murder in the first degree, in the language of the homicide statute (section 4454 of the Code), as any kind of willful, deliberate, malicious, and premeditated killing, and again, in the language of a later clause of the statute, as a killing "perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life." In the next place, the jury were instructed that "if she [defendant] aided or abetted any way in the firing of the shots testified about, or participated in and about the firing of the shots"—meaning as the context discloses, that if the shots were fired at her instance or by her procurement—"then it would be for you to say" whether she was guilty under the last-quoted clause of the statute. Then the court very briefly defined murder in the second degree as where a killing is done "unlawfully, without legal excuse or justification, purposely, willfully, and prompted by malice." Defendant excepted to so much of the charge as submitted to the jury any question as to whether or not she aided in firing the shots. We have stated the order in which the court proceeded. We construe the instruction as to aiding and abetting as supplemental to the definition of murder in both degrees.

It will be observed that, apart from any inference unfavorable to defendant that may have been drawn from defendant's method of accounting for the pistol in the flour can, the evidence, the substance of which has been stated, affords no answer to the question whether defendant or her son fired the shot which killed deceased, nor, if it be assumed that the son fired the shot, was there evidence that the defendant on trial aided or abetted the act in any way. The jury may have inferred that one or the other of them fired the shot, but if the inference was that the son did the act, there was nothing on which to hang the further inference that the mother aided or abetted the act. The mere presence of the two in the house, in the circumstances stated, afforded no clue as to which of them did the act, or that the act, done by one, was aided and abetted by the other. Nor would the fact that defendant on trial then or previously made a false statement as to how the pistol came to be in the flour can, if so she did, suffice as a reasonable basis for the exclusive conclusion either that she had used the weapon to fire the fatal shot, or that she had aided or abetted that

use of it by her son. The effort to conceal the pistol, if there was such effort, was made after the fact, and the same natural impulses which the statute (Code, § 3197) recognizes as a sufficient reason for exempting the parent of an offender from punishment for aiding in his escape would serve to account for defendant's act in concealing evidence of the crime. Ferguson v. State, 134 Ala. 63, 32 So. 760, 92 Am. St. Rep. 17. In the cited case, the father was indicted and convicted as an accessory before the fact of a killing by the son; that is, the father was convicted on that theory of the facts. The court said of testimony going to show defendant's association with the son after the killing, "clandestine though it may have been and intended to accomplish the son's concealment or escape, neither in itself or in connection with any evidence in this record can such testimony be considered as affording any just inference that defendant was criminally connected with the homicide," and reversed the conviction because the testimony had been admitted.

[1, 2] If two persons are put on trial for a crime as to which the evidence affords no reasonable inference that the criminal act was done in co-operation by the two, the state assumes the burden of fastening guilt upon one or the other of them beyond a reasonable doubt, and no conviction can be had on the ground that one or the other of them must have been guilty, and, of course, the same principle of justice must apply in case the two are tried separately. Any other rule would justify a conviction upon a speculative conclusion. That, of course, cannot be allowed, for the law in every criminal case requires as a prerequisite to a verdict of guilt that the jury must be satisfied of the guilt of defendant beyond a reasonable doubt. Proof that either one or the other of two committed a crime, without fastening guilt upon either, or both in co-operation, does not satisfy the mandate of justice. The trial judge had, of course, a nearer and perhaps a better view of the evidence than we can have, but the court here is agreed upon the suggestion that upon another trial it be considered whether in the peculiar circumstances of this case the jury may not be profitably instructed along these lines.

[3] On the morning after the killing a steel-jacketed bullet was found embedded in the front wall of the church, a wooden structure. Two witnesses for the defense testified as to their judgment, or recollection, of the direction from which the bullet came, evidently basing their testimony on their observation of the hole in the weatherboarding made by the bullet. Their testimony, if credited by the jury, tended to discredit the testimony of witnesses for the prosecution to the effect that the bullet came from the direction of defendant's back porch and tended to

locate the point of firing as in the rear of defendant's garden or between the garden fence and a road in the rear, marked on the diagram shown in the transcript as "Drive Road" and in the direction, approximately, of the Bush house, which was located 75 feet to the southwest of defendant's poultry, cow, and car barn which stood within a few feet of the southwest corner of defendant's dwelling house and the back porch. The church was west of the dwelling, as has appeared. The bullet had been picked out. When the witness Gibson saw the hole "some time later," "another man was poking a stick in the hole." We are of opinion that the witness should have been allowed to state his judgment as to the direction from which the bullet came as being a matter of common observation, admitting of no simpler statement, subject, of course, to cross-examination. The question of direction was of utmost importance in the case, and the jury were entitled to have the testimony of this witness, to be weighed along with that of other witnesses who differed among themselves, as to the matter just here in dispute. "The ground upon which opinions are admitted in such cases is, that, from the very nature of the subject in issue, it cannot be stated or described in such language as will enable persons not eyewitnesses, to form an accurate judgment in regard to it." Jones on Evidence (2d Ed.) § 360.

[4] The competency of evidence of this character rests upon two necessary conditions, which, we think, were met in this case. "First, that the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and second, that the facts upon which the witness is called to express his opinion, are such as men in general are capable of comprehending and understanding." Commonwealth v. Sturtivant, 117 Mass. 122, 19 Am. Rep. 401. This rule has been followed by this court and generally. Conner v. Ray, 195 Ala. 174, 70 So. 130; Reid v. State, 181 Ala. 16, 61 So. 324; 22 C. J. 564. We have cases in which the witness was asked to state (in effect) the direction whence came the missile inflicting a wound upon the person. The rulings in cases of that character are to be justified on the ground that, ordinarily, the testimony has failed to meet one or the other of the conditions stated, and there is in this case no need to impair their authority.

[5, 6] One ground of the motion for a new trial was that the sheriff of the county, next morning after the jury had passed the night at the jail, where quarters were provided for them, called one of the jurors aside and had a private conversation with him on the subject of the difference of opinion among the jurors as to the guilt or innocence of defendant.

That such was the fact was not denied. According to the sheriff, the conversation was innocuous, but the juror, whose testimony was heard on the motion, gave every indication of a desire to evade direct and frank answers to the questions put to him by counsel with the purpose to elicit the facts as to what passed between them. The incident, as reported in the bill of exceptions, has a suspicious, if not sinister, appearance. Enough appears to make it reasonably clear that the sheriff knew that the juror was one of a minority, who, up to that time, had stood out for a much lighter punishment than that assessed by the verdict, that the sheriff indicated to the juror the desirability of an, agreement, and that in a very short time after the jury were returned to the courthouse, on the next ballot, the juror and those who had been in agreement with him went over to the majority with the result indicated by the judgment and sentence now under review. All such communications with jurors are highly improper and reprehensible. K. C., M. & B. R. R. v. Phillips, 98 Ala. 159, 13 So. 65, where the subject is considered at length. The sheriff was in authority; it is safe to assume that in the mind of the juror he represented the state, the law; the court is of opinion that the stated conduct on the part of the sheriff may have influenced the verdict, that the burden of satisfactory explanation— that the verdict was not influenced by the matter under consideration—was put upon the prosecution, and that the explanation offered is unsatisfactory to a decree, and that on this ground, if no other, the defendant's motion for a new trial should have been granted. 17 Am. & Eng. Encyc. 1205.

Reversed and remanded.

GARDNER, BOULDIN, and BROWN, JJ., concur.