9 So.2d 914

## REDUS v. STATE.

### 8 Div. 143.

Supreme Court of Alabama.

June 18, 1942.

Rehearing Denied Oct. 8, 1942.

322

Henry D. Jones, of Moulton, for appellant.

Thos. S. Lawson, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

THOMAS, Justice.

The indictment and conviction were for murder in the first degree. The indictment and verdict of guilty, fixing the punishment at death, were in due form.

No question is presented for review as touching the organization of the court, the arraignment of the defendant, the setting down of his case for trial, nor as to the venire or selection of the jury by which appellant was tried.

The judgment of the court was as required by law under the verdict rendered by the jury and the statutes that obtain. Code 1940, T. 14, §§ 314–319.

There were 51 written charges requested by the defendant and given by the court

that covered the many phases of the trial. Seven written charges requested by the defendant were refused. We will consider the refused charges later. See Wilson v. State, Ala.Sup., 8 So.2d 422,[1] as to charges of the court touching the matter sought to be impressed on the jury in the refused charges.

The oral charge of the court was comprehensive and covered many of the instructions contained in the given charges.

■ Refused charges L., M., N., and 36 were defendant's request for the affirmative instruction. The corpus delicti being shown by evidence and there being material conflict in the evidence, the affirmative charge was denied to the defendant without error.

The court, in its oral charge, correctly defined insanity as excusing for crime. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193.

■ Refused charge 4, touching the subject of insanity, was abstract. This was conceded by counsel for defendant in the oral argument, which was in accord with the evidence on the subject. Refused charge 46 was condemned by this court in Hayes v. State, 225 Ala. 253, 255, 142 So. 675, 677, for the stated reason that the charge was properly refused as being "argumentative and misleading, if not otherwise faulty," and in the instant case the first ten words are unintelligible. We have examined carefully the given charges and the matter sought to be embraced in refused charge 46 was fully and fairly stated in given charge 12, at the request of defendant-appellant.

Refused charge AA was in the following words: "AA Gentlemen of the jury embraced in the indictment of this case is the offense of manslaughter in the first degree, and I charge you that it is not necessary for the defendant, at the time he fired the shots, should have been unconscious of what he was doing; but, if there was a sufficient provocation to excite sudden passion and defendant acted under such passion, then the presumption is that passion disturbed the sway of reason and made him regardless of his act; and if the jury finds this from the evidence they may find him guilty of manslaughter in the first degree."

■ It will be noted that this charge was vague and uncertain and contained misleading tendencies as to the law of passion suddenly aroused. McBryde v. State, 156 Ala. 44, 47 So. 302. It may be said further of the charge that it was not a correct definition of manslaughter in the first degree as being an unlawful killing of another without malice but voluntarily done in a sudden heat of passion presently engendered by sufficient provocation.

Adverting to the oral charge it should be observed that it was comprehensive under the law and the evidence touching the defendant's guilt or innocence and correctly defined the degrees of murder and manslaughter, the burden of proof that must be discharged by the state before a conviction may be had, and the reasonable doubt and probabilities of innocence which obtains during the trial.

The jury were further instructed as to the weight to be given to evidence of good character of a defendant when considered in connection with all the other evidence and that when so considered such evidence of good character may generate a reasonable doubt of defendant's guilt.

■ The court further instructed the jury as to the effect of evidence given by expert witnesses and that while the jury are not concluded by the opinion of an expert, it is their province as triers of the fact to measure the weight and correctness of expert opinions given.

■ We are brought to a consideration of rulings made in the introduction and rejection of evidence and the refusing of defendant's motion for a new trial. The motion for a new trial is contained in the record proper. Worthy of consideration were the facts that the deputy sheriff Biles, who was a material witness for the state, was placed in charge of the jury as a bailiff during the deliberations in the case and that the jury occupied six or seven rooms in a local hotel during the trial of the case and were separated as a body, due to the fact that there were no connecting doors to the rooms so occupied by them. In oral argument and brief appellant relies on the recent decision in Oliver v. State, 232 Ala. 5, 166 So. 615, as authority for reversal because the deputy sheriff Biles was in charge of the jury.

In Clark v. State, 240 Ala. 65, 197 So. 23, 24, it was held:

"An officer is not. rendered incompetent as a witness by fact that he, as such

---

[1] Ante, p. 1.

officer, had duty of caring for, attending to, and being in charge of, jury.

"That a sheriff and deputy sheriffs, who were material witnesses for state in murder prosecution, were in charge of jury during meal hours, and at night in absence of trial judge, was not ground for granting defendant's motion for new trial."

This holding was in accord with Oliver v. State, supra, and Pope v. State, 168 Ala. 33, 53 Ala. 292.

In Oliver v. State, 232 Ala. 5, 166 So. 615, 617, it was held on the facts before us that: "* * * The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute. The authorities on this subject are collected in Roan v. State, 225 Ala. 428, 435, 143 So. 454; Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Lakey v. State, 206 Ala. 180, 182, 89 So. 605."

In that case reversal rested on the peculiar facts that the one who chiefly worked up the evidence for the state was with the jury in their deliberations, slept and ate with them, and was the coroner, who had been appointed special deputy for the occasion, and was not a sheriff or regular deputy sheriff. In the Clark case, supra, there was affirmance. The facts in that case were that the sheriff and deputy sheriff, material witnesses for the state, were in charge of the jury during meal hours and at night during the trial.

In McElory v. State, Ala.App., 7 So. 2d 508;[1] Id., Ala.Sup., 7 So.2d 489,[2] there was reversal because of the fact that the jury were transported beyond the confines of the county and domiciled in separate hotel rooms in Jefferson County.

The foregoing authorities illustrate that each case is to be judged by its own peculiar and particular facts.

■ In support of defendant's insistence that the jury were allowed to separate, being placed in six or seven rooms of a hotel at night, appellant's counsel cite Payne v. State, 226 Ala. 69, 145 So. 650; Butler v. State, 72 Ala. 179, 180. In the Payne case the sheriff and eleven jurors occupied three adjoining rooms in the hotel and the twelfth juror slept on a cot in the hall near the stairway, which was used by the public generally. It was shown that this twelfth juror left the hotel alone early the next morning and went up town. The holding was that there was a presumption of injury in this juror sleeping as he did and in going up town alone, since the state failed to rebut such presumption of injury. However, the opinion refused to decide if there was injury because of the separation of the jury by virtue of the sleeping arrangements indicated.

In the Butler case, supra, Judge Stone said: "* * * If any of the jurors have been conversed with, on questions affecting the prisoner's guilt; or, if other influences have been exerted, which may have biased their deliberations, a new trial should be granted. On the other hand, if there be an entire negation of such interference, there is no ground for setting aside the verdict. * * *."

The record fails to show any prejudicial error intervened by reason of the separation of the jury in the instant case during the night spent in the local hotel in Athens.

In Arnett v. State, 225 Ala. 8, 141 So. 699, 700, Mr. Justice Foster made an observation which has application to jury trials in small towns and cities and which care for the members of the jury during the night. He concludes by saying: "The temporary separation here shown was a reasonable allowance by the court, and seems to have been properly safeguarded and no prejudice resulted."

Such is the case disclosed by the present record as to the care given to the jury at the hotel. See 34 A.L.R. 1204, and 79 A.L. R. 833, where the leading authorities on this point are collected and discussed. Davis v. State, 240 Ala. 365, 199 So. 547.

■ The verdict of the jury being for murder in the first degree, and the death penalty having been imposed, we will consider the bill of exceptions for rulings on the introduction and exclusion of evidence on the trial of the case.

■ The witness from the State Department of Toxicology of Auburn, C. J. Rehling, qualified as an expert on the matters about which he testified. He was asked and answered the following questions:

"Ques. by the Solicitor: 'From your experience and the examination of the bullets of pistols and photographic examination of

---

[1] 30 Ala.App. 404.

[2] 242 Ala. 529.

pistol balls, would you say both of these balls were shot from the same pistol?' The defendant objected because it is illegal, immaterial and the Court Says, 'I will let the witness state to the jury what kind of examination was conducted and after he states in detail method of examination, I will allow him to state his conclusion from it.'

"Witness ans. 'This examination, to examine the pattern that was transferred to each of these bullets, they are mounted on what is known as a ballistic microscopic instrument, designed for such examination in which we can view portions of both bullets at the same time by mounting them on there, and putting them in juxtaposition, we can examine the minute particles and markings of the barrels; these patterns are markings for each gun; it is projected in that gun when it is made and is characteristic of that gun only, and that gun will transfer that pattern to that ball when it is fired, and by determining whether the patterns are alike or different, you can tell whether they are fired from the same gun. That is what I did here and after I obtained these two views here, I photographed them and these are the two views. Those are photographs of the two bullets. I made them.'

"By the Solicitor: 'We offer the two photographs in evidence.'"

The defendant's attorney objected to the introduction of this evidence, but the court overruled the objection, and then the defendant duly excepted.

Further testifying the expert witness was asked and said: "Q. 'Doctor from those examinations that you have stated that you made and tests that you give, is it your opinion, would you state, that these two bullets were fired from the same gun?' The defendant objected to the question the Court overruled the objection and the defendant duly excepted. Wit. ans. 'They were fired from the same gun.'"

In these rulings of the court there was no error and in connection with this established expert witness' testimony the two photographs and bullets were offered in evidence, over objection and exception of defendant.

In this ruling and admission of evidence, there was no error.

 The witness being recalled on redirect examination testified as follows: "I have examined that gun. The riflings in that gun is 5 lands and 5 grooves, which is a Smith & Wesson rifling. The bullet I have here (indicating) this particular ball of that make with adaptable powder it is used in 32-shorts in some instances."

On Recross-examination he testified; "'I said the bullet would correspond in weight to a .32-long.' Defendant's attorney asked witness the following ques: 'Didn't you say it was a .32-long'? The Solicitor objected to this question. The Court sustained the objection and the defendant reserved an exception. * * *."

In the introduction of this evidence there was no error. It tended to explain the other evidence before the jury. It was a material inquiry as to whose pistol caused the death of the deceased, whether that of defendant or the other policeman. The nature and character of the respective pistols and the size and character of the bullets shot from said pistols were before the jury.

 Calvin Hammond, an eyewitness for the defendant, testified on recross-examination, as follows: "'* * * I hadn't paid any attention and I didn't see any trouble of any kind going on. I got excited and run in the hotel. I hadn't heard any threats, hadn't seen any weapons drawn on anybody. I didn't know about Robert Redus, hadn't seen him down there and I didn't know about him searching for those policemen.' Ques. by Solicitor: 'And that he had murder in his heart.' The defendant objected to this question the court sustained the objection."

The remark of the solicitor was improper and defendant's objection was sustained by the court. It was not of such character that it could not be eradicated by a ruling of the court, sustaining defendant's objection. No motion for a new trial or mistrial was made because of this improper remark. Moulton v. State, 199 Ala. 411, 74 So. 454; Canty v. State, 238 Ala. 384, 389, 191 So. 260. Such remark was not within the rule of our mistrial cases.

In the presentation of defendant's evidence, his counsel became a witness in his behalf, and testified about the pistol alleged to have been the one owned and used by the defendant at the time of the homicide. The several objections by the solicitor were overruled and the witness told the jury the manner in which he came by the pistol, its nature and the bullets it employed when loaded. The pistol, bullets and shells and

picture of defendant's car and the parts damaged by the pistol were received in evidence.

Defendant testified in his own behalf, and, among other things, said: " * * * 'I did not go down there to shoot anybody.' The Solicitor objected and the court stated: 'Sustain the objection as to the question whether he went down there to shoot anybody.' By Mr. Jones: 'That wasn't the question they objected to.' By the Court: 'Were you mad at anybody when you went down there?' The Solicitor objected and the Court overruled the objection. 'I was not mad when I asked Nick Townsend if he had seen the officer. I wasn't mad when I went to the car and asked Mr. Johnson about had he been over to my house.' "

█ In this ruling there was no error to reverse. The colloquy that occurred and ruling thereon on cross-examination was without error. It was testing the witness as to the kind and character of pistol with which he had shot the deceased and threw away on his flight. So of the several questions by the solicitor on cross-examination testing defendant's motive in going from his house at the time of night in question to find the police officers who had been to his house at an earlier hour.

The witness was asked and answered the following questions: "Ques. by Solicitor: 'And didn't they ask you at that time where your pistol was and you told them you threw it away just this side of Nashville.' The defendant objected because it is irrelevant and immaterial, and no predicate has been laid for it and he was under arrest and was not a voluntary statement. The Court overruled the objection and the defendant excepted. Witness answered, 'I didn't tell him exactly where I threw it, I didn't say it was just this side of Nashville.' Ques. by Sol. 'Mr. Jones asked you if you were mad; didn't you tell Mr. Knox Biles as you came on here up about Columbia, Tennessee, that the trouble with you that you were just mad?' Defendant objected because it is irrelevant, immaterial and incompetent and no predicate laid for it. The Court overruled the objection and the defendant excepted. Witness ans. 'No. sir, I did not tell Mr. Biles I just got mad. * * *.' "

█ In these rulings of the court there was no error as it was material evidence as to the pistol defendant used, that he threw away in his flight and at a different place than his father testified he found it, and as shedding light on the defendant's feelings, intent or motive at the time of the homicide.

█ The witness Esther Redus, a witness for the defendant, testified as to a conversation that took place between her and Mr. Johnson, the policeman, before defendant left home that night. The state, through Mr. J. W. Johnson, sought to impeach the testimony of the witness Esther Redus. The following occurred in Mr. Johnson's direct testimony:

"I went to Henry Redus's house Sunday morning after the shooting. Esther and his sister too was sitting on the porch. In a conversation I asked Esther what Robert said before he came down town. In answer to that she said, he said, he was coming down to settle with police, about insulting his sister.

"The defendant objected that is irrelevant, incompetent, immaterial, no proper predicate has been laid, not in rebuttal, illegal. The Court overruled the objection, and will permit the answer in the affirmative to go to the jury for one purpose, and that is as affecting the credibility of the witness, Esther Redus, and not as affecting the question of intent of defendant. In other words, the only purpose for that testimony is to enable the jury to tell what belief the jury will accord the testimony of Esther Redus, and for only that purpose, and for no other purpose."

A proper predicate was laid on cross-examination.

█ On further examination of Mr. Johnson for the state the following occurred: " * * * The Court: 'Mr. Johnson at the time of this difficulty what kind of a pistol did you have?' Wit. ans. 'I had a .22 Automatic'? The Court: 'that shoots what kind of cartridges?' Wit. ans. 'It shoots a .22-long. Thats the only kind of cartridge it will shoot. Mr. Brackeen had a .22 High Standard Automatic.' The Court: 'Did you use a .32 revolver or a .32 automatic?' Ans. 'I've never carried one on the job.' The Court: 'You did not have one on you that night?' Wit. ans. 'No. sir, I only have one gun, my .22. I have been carrying a .22 for 3 or 4 years.' The defendant moved to exclude that statement and the Court sustained the motion. The Court: 'There were only three guns fired

there that night.' Wit. ans. 'Yes sir.' The Court: 'And you know yours was a .22 Automatic and Mr. Brackeen's was a .22 Automatic, and you don't know the caliber of the other?' Wit. ans. 'No. sir, I don't.' "

The answers of Mr. Johnson were proper and the purpose for which they were permitted definitely explained by the court and gave the jury a more specific understanding at their introduction as to whose pistol caused the death of Mr. Brackeen and did not show an unnecessary interest on the part of the court.

█ The sheriff as a witness had testified as follows: " '* * * He said he threw that gun away just before he got to Nashville way over the woods. The train was running fast. I asked him if he could take me where he thought he threw the gun, and he says I couldn't do it to save my life. That when I was bringing him from Nashville. I talked to Henry Redus about the gun.' Ques. by Sol. 'Did he tell you that he didn't know anything about the gun?' The defendant objected, it would be hearsay, the Court stated it would be admissible for the purpose of impeachment, the Court overruled the objection and the defendant excepted. 'He told me he didn't know anything about the gun. * * *.' "

There was no error in overruling defendant's objection.

█ Mr. Biles laid a predicate for the several voluntary statements made by the defendant on the train in his, the sheriff's and Mr. Rowe's presence, while defendant was under arrest, and said:

"By Mr. Johnson, the Solicitor: 'Ques. Now tell the jury what he said.' Wit. ans. 'Robert said he hated it about Mr. Brackeen.' Wit. says, 'we all hate it, but we all make mistakes sometimes.' The defendant says, 'Well I just lost my temper.' The defendant's attorney objected to this evidence because it did not follow the predicate."

This statement was denied by the defendant on his re-examination, whereupon Mr. Biles was recalled, and on further testimony (direct examination) said: "As we were bringing him back on that occasion, and stopped at Columbia, Tennessee, he said in substance, 'I just lost my temper,' and 'that was the cause of the whole thing.' "

This was without a predicate as merely an incriminating statement. There was no objection or exception to this latter statement by Mr. Biles.

The defendant was further examined as to these conversations in the presence of Mr. Biles and others who were on the train, and the court asked: " 'Did you talk all the way down?' Wit. ans. 'No sir it didn't take me more than a minute. I asked was anybody shot and they said yes Mr. Brackeen was dead, and they asked if I knowed anything about it and I said I didn't know.' The Solicitor objected to this statement and the Court overruled the objection. 'Mr. Whitt asked if I had seen anything in the paper about it, and I told him I hadn't. When they told me about Mr. Brackeen, I told them I was sorry it happened. I said nothing about losing my temper.' "

There was no objection as to this by defendant's counsel.

We have carefully searched the whole record and find that appellant had a fair trial and that no reversible error intervened. Howerton v. State, 191 Ala. 13, 67 So. 979.

The judgment of the circuit court is affirmed.

The date set for the execution of the sentence of the law on the defendant having passed pending this appeal, it is hereby ordered by this court, that Friday, the 21st day of August, 1942, be and the same is hereby set for the execution of the sentence of the law on this defendant.

Affirmed. Date of execution set for August 21st, 1942.

All the Justices concur, except KNIGHT, J., not sitting.

### On Rehearing.

THOMAS, Justice.

In consideration of this case on original hearing, we tried to follow appellant's brief. As we understood that insistence it was not rested upon the point now made as to qualification of jurors. The appellant now says that in qualifying the jury separately and severally, the circuit solicitor (representing the state) was permitted by the court, over the repeated and timely objections of the defendant, to ask the jury: "Gentlemen, do you have any moral or religious scruples against capital punishment? Do you believe that the Bible, in any of its parts, taught that capi-

tal punishment was contrary to the Bible?" The court overruled the objections of the solicitor for defendant and the defendant then and there duly excepted.

Appellant's counsel assigned numerous grounds of objection, one being that under our Constitution of the United States every person has a right to worship just as he pleases and to interpret the Bible, and insists that the solicitor for the state had no right to inquire into matters personal and sacred to the jurors.

Appellant's counsel further says that the first proposition made in their brief was that "appellant was denied a trial by an impartial jury and was deprived of his life and liberty without due process of law under Section 6 of the Constitution of Alabama of 1901." Numerous cases were cited as authority for this point.

We will now consider some of the authorities cited by appellant's counsel on this point. In Oliver v. State, 232 Ala. 5, 166 So. 615, the question was illegal separation of the jury during the trial. The case of Roan v. State, 225 Ala. 428, 143 So. 454, touched the drawing and summoning of the venire. Leith v. State, 206 Ala. 439, 90 So. 687, dealt with the excusing of jurors whose names appeared on the venire served on defendant. Lakey v. State, 206 Ala. 180, 89 So. 605, the presence of a bailiff in the jury room for a short while was considered. Aylward v. State, 216 Ala. 218, 113 So. 22, dealt with the sheriff conversing with one of the empaneled jurors. In Satterfield v. State, 212 Ala. 349, 102 So. 691, it was held that a question by a juror to a bailiff who had entered the jury room was improper. Lowery v. State, 23 Ala.App. 191, 122 So. 603, touched the conduct of the sheriff with the jury, and so in Taylor v. State, 18 Ala.App. 466, 93 So. 78. The case of Payne v. State, 226 Ala. 69, 145 So. 650, dealt with the separation of the jury after the trial had commenced. Butler v. State, 72 Ala. 179, considered separation of the jury as the same misconduct after the trial had begun. It is thus evident from the foregoing that the authorities cited by appellant's counsel are not in point.

■ The Act of 1919, p. 1039, has been frequently considered by this court and the codification thereof is contained in the Code of 1940, T. 30, §§ 63 and 64. It has been recently held that the voir dire examination of jurors as to qualifica-

tion and the course and extent thereof is largely within the court's discretion. Rose v. Magro, 220 Ala. 120, 124 So. 296; Code 1940, T. 30, § 55, Subsection 3; Hendry v. State, 215 Ala. 635, 112 So. 212; Gholston v. State, 221 Ala. 556, 130 So. 69. In the qualification by the court and the information sought thereby, and the further examination by the solicitor, herein set out, there was no abuse of the sound discretion as a part of the voir dire examination of the panel from which the jury was selected.

Reasonable exercise of the right of examination of the jury in no wise touched the freedom guaranteed by the first and fourteenth amendments of the Federal Constitution nor was it touched by the opinion of the Supreme Court of the United States in Roscoe Jones v. City of Opelika, 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691; Peterson v. State, 227 Ala. 361, 150 So. 156; Louisville & Nashville R. Co. v. Davis, 236 Ala. 191, 181 So. 695; Leath v. Smith, 240 Ala. 639, 200 So. 623.

It follows from the foregoing that the statute in question did not authorize or empower the parties to "require the court to put such questions to the jury even when properly framed." Such matters are within the exercise of a sound discretion by the trial court.

■ The trial court in qualification of the venire from which the men for the jury were to be selected pursuant to the statute, Code 1940, T. 30, §§ 52, 55, 56, 57 and 60, which is codification of the Act of 1919, p. 1039, and Code 1923, §§ 8662, 8610, 8611, 8612, 8641, and in permitting the solicitor to propound questions to that venire as above indicated, committed no reversible error. It was declared in Rose v. Magro, 220 Ala. 120, 124 So. 296, that within the limits of propriety and pertinence the parties, within the sound discretion of the court had the right to reasonably and timely propound questions to jurors to enable such party or his counsel to intelligently exercise any rightful choice, though the matters of which inquiry are made by such counsel are not a disqualification under the statute. Such in effect are the general authorities that are cited. This statement of the rule has been adopted by this court in Gholston v. State, 221 Ala. 556, 130 So. 69.

It results from the foregoing that the application for rehearing should be and the same is overruled.

The date set for the execution of the sentence of the law on the defendant having passed pending this appeal, it is hereby ordered by this court, that Friday, the 11th day of December, 1942, be and the same is hereby set for the execution of the sentence of the law on this defendant.

Affirmed. Date of execution set for Friday, December 11th, 1942.

All the Justices concur except LAWSON, J., not sitting.