75 So.2d 479

### Willie MILES

### v.

### STATE of Alabama.

3 Div. 682.

Supreme Court of Alabama.

Oct. 7, 1954.

Rehearing Denied Nov. 11, 1954.

B. E. Jones and Robert H. Jones, Evergreen, for appellant.

Si Garrett, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CLAYTON, Justice.

This case is before us by virtue of the Automatic Appeal Statute, §§ 382(1) to 382(13), Tit. 15, Code of Alabama, 1940, Cum.Pocket Part.

Appellant's counsel have furnished us with an excellent brief which discusses every point worthy of consideration. Under our view of the case, however, only one of these need be treated in this opinion, the others relating to matters either within the discretion of the trial court, or which are unlikely to arise on another trial.

Upon being called on the morning after the alleged offense, the sheriff and his brother, the chief deputy, began an investigation. Soon they were joined in the investigation by Sergeant Melton and another member of the Highway Patrol. As a result of their investigation, the defendant was arrested and committed to jail. As a further result of their activity, an alleged confession was obtained from the defendant at his home where he was arrested. It is undisputed that they caused the defendant to remove all his clothing. The defendant's testimony was that he was beaten and otherwise mistreated, by two of the officers in order to coerce this confession. The sheriff and Sergeant Melton testified that no coercion, violence, force or mistreatment of any kind was imposed upon the accused. The sheriff made the entire investigation of the case, was the chief actor in discovering and bringing into court the evidence upon which the accused was indicted and convicted, and in addition was the principal witness against the accused other than the victim of the alleged offense. The highway patrolman was also a witness.

Defendant's motion for a mistrial before the case was submitted to the jury, and defendant's motion for new trial after conviction and sentence, in addition to other grounds, assigned the following state of facts, as set out in motion for new trial:

"14. For that John Brock, who is the Sheriff of Conecuh County, and who is the person who investigated the alleged offense and secured witnesses for the State, and who was one of the most important witnesses for the State in securing a conviction, was in charge of the jury during the noon recess, took the jury downtown to a cafe, and ate with them, and was in charge of said jury out of the presence of the Court.

"15. For that John Brock, who is the Sheriff of Conecuh County, was the person in charge of the investigation of the alleged offense, was the person who arrested the defendant, and was one of the persons to whom the first alleged confession was made, and was the principal witness as to the confessions of the defendant, was in charge of the jury out of the presence of the Court during the noon recess when the case was on trial, took the jury to a restaurant in Evergreen and ate with them.

"16. For that John Brock, who is the Sheriff of Conecuh County, took with him his brother, James Brock, who is the Deputy Sheriff, to investigate the alleged offense, that the said John Brock arrested the defendant, that the said John Brock then called for assistance from the Highway Patrol, and Tom Melton, who is a Sergeant of the Highway Patrol, and Captain Mitchell, who is Captain with the Highway Patrol, went to the home of the defendant at the request of the Sheriff; that the said John Brock, as Sheriff, and Tom Melton and Captain Mitchell, as members of the Highway Patrol, had the defendant under arrest, had him in the car with all three of said officers who were armed when he made his first alleged confession; the said John Brock was the principal witness for the State as to said confession, and the said Tom Melton was also a material witness for the State; that during the noon recess on the day the defendant was being tried, the said John Brock, the Sheriff, the said James Brock, a Deputy Sheriff who had assisted in the investigation, and the said Tom Melton were the three persons in charge of the jury; the said three persons took the jury to a restaurant in Evergreen, Alabama, away from the Courthouse and out of the presence of the Court, and ate with the jury, and the said John Brock and Tom Melton were material witnesses for the State in this case."

Our leading case of Oliver v. State, 232 Ala. 5, 166 So. 615, 617, concurred in by all the Justices, quotes from the case of Owens v. State of Florida, 68 Fla. 154, 159–160, 67 So. 39, 40, Ann.Cas.1917B, 252, and cases from other jurisdictions and contains so much of our law on this subject that the opinion in that case, so far as here applicable is quoted:

"It is established that in their deliberation the jury should be separated from and uninfluenced by the outside world. Any misconduct that might influence the jury, affect the verdict rendered or the punishment fixed, is a cause for a new trial. The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute. The authorities on this subject are collected in Roan v. State, 225 Ala. 428, 435, 143 So. 454; Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Lakey v. State, 206 Ala. 180, 182, 89 So. 605.

"The Coroner Enslen, who has been active in investigating the case, procuring witnesses, causing the defendant's arrest, testified as to material facts and should not have been permitted by the sheriff to have charge of the jury and to remain with them during much of their deliberation. As to this conduct, the state did not overcome the presumption of injury that entered into the verdict rendered by reason of the presence of such witness. Roan v. State, supra; Aylward v. State, 216 Ala. 218, 113 So. 22; Satterfield v. State, 212 Ala. 349, 102 So. 691; Lowery v. State, 23 Ala.App. 191, 122 So. 603; Taylor v. State, 18 Ala.App. 466, 93 So. 78.

"Each case is to be judged by its particular facts. Bell v. State, 227 Ala. 254, 149 So. 687. The association of this witness (Enslen) as special bailiff in control of the jury during the trial and its deliberations, furnished opportunity for ingratiating himself in the minds of the individual jurors, and for unduly emphasizing his testimony given in that case, causing it to affect and enter into the verdict rendered. His constant presence with the jury no doubt had bearing upon the case, though he and the jurors testified that he had not spoken to any individual juror about the evidence in the case or about the defendant. The injury which resulted was no doubt unconsciously brought about, but was none the less real or effective.

"In a case very much like this case, Owens v. State of Florida, 68 Fla. 154, 159–160, 67 So. 39, 40, Ann.Cas.1917B, 252, the Chief Justice observed: 'It is sufficient to say that while it is not affirmatively made to appear that either Beach or Cellon did actually attempt to influence the jury in any way, and, as a matter of fact each one positively denies having done so, yet it plainly appears that each one had the opportunity of so doing. It was manifestly improper for Beach, who was a material witness for the prosecution, to have charge of or to be with the jury. See People v. Knapp, 42 Mich. 267, 3 N.W. 927, 36 Am.Rep. 438, and appended note. We would also refer to Madden v. State, 1 Kan. 340; State v. Snyder, 20 Kan. 306; Gainey v. People, 97 Ill. 270, 37 Am.Rep. 109; Rickard v. State, 74 Ind. 275. We shall not undertake to express any opinion concerning the evidence. Suffice it to say that there is a conflict therein upon material points. This being true, and it plainly appearing that some of the deputies of the sheriff had acted in an irregular and improper manner while in charge of the jury and it would seem, were over zealous for the prosecution, we think that the ends of justice would be best subserved by another trial. As was said in Buxton v. State, 89 Tenn. 216, text 217, 14 S.W. 480: "An impartial jury, selected and kept free from all outside or improper influences, has always been regarded by our courts as necessary to a fair and impartial trial." '

"For the action of allowing the jury to be in charge of the witness Enslen and his immediate presence and association with the jury during the trial, a new trial should be and is hereby granted. The judgment of the circuit court is reversed, and the cause remanded."

The foregoing decision is quoted in part in footnote 2, 23 C.J.S., Criminal Law, § 1352, p. 1013.

In the case of Aylward v. State, 216 Ala. 218, 221, 113 So. 22, 24, the sheriff had a private conversation with one of the jurors. Although the sheriff testified that the conversation was innocuous, the case was reversed. The opinion of this court, by Sayre, J., concluded with the following:

"All such communications with jurors are highly improper and reprehensible. Kansas City, M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65, where the subject is considered at length. The sheriff was in authority; it is safe to assume that in the mind of the juror he represented the state, the law; the court is of opinion that the stated conduct on the part of the sheriff may have influenced the verdict, that the burden of satisfactory explanation—that the verdict was not influenced by the matter under consideration—was put upon the prosecution, and that the explanation offered is unsatisfactory to a decree, and that on this ground, if no other, the defendant's motion for a new trial should have been granted. 17 Am. & Eng.Encyc. 1205."

Our Court of Appeals in reversing Taylor v. State, 18 Ala.App. 466, 93 So. 78, 79, on account of action of the sheriff in telling one of the jurors that the judge did not permit a mistrial, etc., ended its opinion with the following comment about the office of sheriff:

"The sheriff is an officer of the court, his word in any county has weight, and when he gives expression to not only his opinion, but the opinion and wish of the judge, it carries with it the weight of authority, and is bound to have influence with the jury; but, whether it appears that it did or not, 'the law will not inquire what was the effect of such intermeddling [with the jury], if it was of such a nature as to have any tendency to affect the verdict injuriously to the party against whom it is found.' As was said in the case of Driver v. Pate, 16 Ala.App. 418, 78 So. 412:

" 'The question is not whether this misconduct on his [sheriff's] part did affect the verdict, for it has been held many times that it need not be shown, necessarily, that the misconduct relied on as a ground for a new trial actually controlled or determined the verdict, if it is made apparent that the verdict might have been affected by it.' Kansas City, M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65.

"The conduct of the sheriff complained of may have been honest, indeed, no doubt, was absolutely free of any intentional wrongdoing; but can it be said, from the facts in this case, that the verdict might not have been affected by his conduct? Weaver v. State, 17 Ala.App. 506, 86 So. 179.

"For the error pointed out, the judgment must be reversed, and the cause remanded."

And, again, in Lowery v. State, 23 Ala App. 191, 192, 122 So. 603, 604, the sheriff when called to the door of the jury room and told by a juror that they had not arrived at a conclusion and wanted to know if they could report a mistrial, the sheriff without reporting to the judge said to the juror: " ' "Well, you will have to stay there then; you will have to stay there." ' " Our Court of Appeals, speaking through Samford, J., made the following observation in regard to the sheriff:

"The sheriff is the chief executive officer of the county, and as such is usually a man of great influence and power; especially is this so when, figuratively speaking, he carries the mace and emblem of his authority during the

sittings of the courts of his county. The possible misuse of this power and authority has been recognized by the Constitution makers of this state since the Constitution of 1875, wherein the sheriff was limited to a four-year term of office and not to succeed himself. This provision is brought forward into and is a part of our present Constitution, and the subject of fees to be paid him in criminal cases is of frequent public and legislative discussion. *Now,* under our prohibition statutes, has been added to this office a personal interest fee of $50 for each conviction in certain prohibition cases. This, together with other fees, gives to the sheriff a personal and financial interest in every criminal case tried in the courts, where he is the executive officer and especially charged with the duty of the custody of juries, while they are engaged in deliberations on causes submitted to them.

"It is of the greatest moment that the sheriff, in this delicate situation, should act with the utmost circumspection. A word from him carries with it more weight than from any officer connected with the court, save the judge himself. He is the only medium through which the jury can make known to the court any desire they may have regarding the case there on trial, and, upon being informed that the jury thought they could not agree, it was his duty to have so informed the court. It was not his duty, and he should not have undertaken, independently of an order of the court, to instruct the jury: 'You will have to stay there.' This was an unwarranted interference by the sheriff in the trial, with a tendency to coerce a verdict from a jury, in a case where he not only exceeded his authority, but was financially interested to the extent of his fees and the $50 reward."

The case of Harris v. State, 233 Ala. 196, 172 So. 347, 348, was a misdemeanor case in which during the course of the jury's deliberations a juror became ill and a

deputy sheriff took him some distance away from the other jurors in order that he procure some medicine and sleep for about three-fourths of an hour. This court held that there was a presumption of injury resulting from the separation of the jury, but that facts recited in the opinion of the Court of Appeals effectively rebutted such presumption. In that case, the juror so removed from his fellow-jurors was in charge of the sheriff or his deputy, both of whom were material witnesses for the state, whose evidence was in direct conflict with that of the defendant. This court held that the fact that the sheriff and his deputy had testified to important facts did not disqualify them from having charge of the jury in that misdemeanor case, making this observation:

"If defendant thinks that they are disqualified for this or other cause, he should ask the court to have another substituted for them. It does not here appear that this was done, and no excuse assigned for not doing so."

The case of Davis v. State, 240 Ala. 365, 368, 199 So. 547, 549, cited by the attorney general in brief for the state, is differentiated from the Oliver case, supra, by one paragraph of the opinion therein by Gardner, C. J., as follows:

"Defendant cites Oliver v. State, 232 Ala. 5, 166 So. 615, as to the deputy Bond who slept in the room with two of the jurors, upon the assumption Bond was a witness for the State. But this assumption is incorrect. Bond did not testify on the trial nor does it appear he had taken any part therein. See reference to Oliver case in Harris v. State, 233 Ala. 196, 172 So. 347. True, Bond admits that he had a wager with one Adams that defendant would be convicted. But the proof is undisputed that the jurors knew nothing whatever as to any such wager. This ground of the motion is likewise untenable."

The case of Clark v. State, 240 Ala. 65, 71, 197 So. 23, 29, was a 1st degree murder case in which the deputy sheriff in charge of the jury was a witness for the state.

That case is differentiated from the Oliver case, supra, by Thomas, J., who was also the writer of the opinion in the Oliver case, as follows:

"The rule adverted to from the case of Pope v. State, 168 Ala. 33, 53 So. 292, was not departed from in Oliver v. State, 232 Ala. 5, 166 So. 615, 617. Each case is judged by its particular facts. In the Oliver case, supra, the coroner was active in investigating the facts of the homicide and testified at the trial. Such official should not have been permitted by the sheriff to have had charge of the jury and 'to remain with them during much of their deliberation.' No such circumstances existed in the instant case. An officer is not rendered incompetent as a witness by the fact that he, as such officer, had the duty of caring for, attending to and being in charge of the jury. 70 Corpus Juris, § 245, p. 183."

The cases of Arnett v. State, 225 Ala. 8, 141 So. 699, and Payne v. State, 226 Ala. 69, 145 So. 650, were both cases in which separation of the jury was assigned as error, and for that reason are readily distinguished from the case at bar, and are not applicable here.

The latest case which comes to our attention is Redus v. State, 243 Ala. 320, 9 So.2d 914, 917, a capital case. In that case, a deputy sheriff Biles who was a material witness for the state was placed in charge of the jury as a bailiff during the deliberations in the case. It was argued for the appellant that the case should have been reversed on authority of the Oliver case, supra, but it was stated in that case that each case is to be judged by its own peculiar and particular facts. Quoting from both the Oliver and Clark cases, supra, at some length, the opinion in the Redus case, says:

"This holding [Clark Case] was in accord with Oliver v. State, supra, and Pope v. State, 168 Ala. 33, 53 [So.] 292."

In the case under consideration, no witness had testified before court adjourned for lunch other than the victim of the alleged offense. At the time that the jury was in charge of the sheriff, the deputy sheriff and Sergeant Melton of the Highway Patrol, outside of the presence of the court, walking to a cafe some distance away from the courthouse in company with them, eating at the same table with them, and walking back to the courthouse with them, the defendant had not had an opportunity to object to this procedure because neither the sheriff nor the patrolman had testified, nor was it known by the defendant whether either of them would testify. As soon as they did testify, counsel for defendant proved the foregoing facts by the sheriff himself and then made a motion for a mistrial which was overruled by the court and to which exception was duly taken. The same question was raised in motion for a new trial and forcibly argued here in appellant's brief. The Oliver case, supra, was reversed on account of the possible influence on the jury's verdict by one man. In the present case, we have the possibility of influence exerted on the jury's verdict by three men, all of whom were extremely active in the case, and they did all that was done in the Oliver case, supra. In both cases, there was testimony that no conversation was engaged in between the officer and the jury in regard to the case. In the Oliver case, supra, the bailiff in charge of the jury was also the coroner. In the case at bar, three officers in charge of the jury were the sheriff, deputy sheriff and highway patrolman. We feel that justice requires another trial, free from probability of injury, even though unconsciously brought about, by the association of the officers with the jury.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

All the Justices concur, except LAWSON, J., who dissents.