282 So.2d 242

**Randy CHANCELLOR**

v.

**STATE of Alabama.**

**S.C. 356.**

Supreme Court of Alabama.

Aug. 30, 1973.

———◆———

Martin & Floyd, Gadsden, for appellant.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Jr., Asst. Atty. Gen., for the State.

FAULKNER, Justice.

A portion of the Book of Proverbs found in the Old Testament admonishes a young man to beware of the wiles of a woman. This case illustrates that Randy Chancellor should, perhaps, become familiar with those chapters and verses.

Randy Chancellor, a young, married man twenty years of age, was alone at his house in rural Cherokee County, Alabama, on September 13, 1971, at 11:00 o'clock A. M. Kathy Lynn Rankin of Anniston drove up in her automobile. Randy and Kathy visited with each other at Randy's house until the afternoon. The record does not show what they did during their visit.. Upon Kathy's suggestion, she and Randy boarded her automobile and headed toward Summerville, Georgia. Kathy was driving. As they proceeded down the road, Mother Nature made a call on Randy. He had to relieve his bladder of accumulated fluid. Kathy stopped her automobile, and Randy got out of the car, stood in the ditch, and answered Nature's call. Not wanting to observe, Kathy drove on down the road, turned around, and came back to pick up Randy. Four officers of the law were parked in a car behind Kathy when she stopped to pick up Randy. Randy, with a paper bag in his hand, re-entered the car, and Kathy drove off at a high rate of speed. The law men pursued. Approximately one-half mile down the road, Randy threw a package from the car. This package was thrown out at Kathy's direction. Randy testified that he had no knowledge of the contents of the package.

(The officers testified that this was the same paper bag they saw in possession of Randy when he re-entered Kathy's car.) Subsequently, Kathy and Randy were stopped by the pursuing officers, who searched Kathy's car. Two officers left to seek the paper bag thrown from the car. They were unsuccessful. Other officers went on the same mission and returned with the paper bag. There were approximately nine ounces of marijuana confiscated by the officers, which was turned over to the State toxicologist.

Randy was indicted for possession of marijuana, a felony, tried on a plea of not guilty by a jury, who convicted him, and he was sentenced to three years in prison. He applied for probation which was denied. For her involvement in the alleged crime, Kathy pleaded guilty and received a sentence of twelve months in the county jail and was placed on probation for a period of two years.

Randy appealed his conviction to the Court of Criminal Appeals from an adverse ruling on a motion for new trial. On April 25, 1973, this case was transferred to this court. There are five grounds in the motion for new trial. We will only consider Ground Number 3 of the motion. The other grounds have no merit.

Ground Number 3 of the motion states that "[T]he Court erred in permitting the Sheriff of Cherokee County over the Defendant's objections to testify in this cause for that even though the rule had been invoked, and said Sheriff was not excused therefrom, he not only stayed in the courtroom and listened to the testimony, but acted as the Bailiff to the jury, taking them to lunch, and in general, looking after their needs." The record shows that after the sheriff testified, Randy made a motion for mistrial alleging these same grounds:

"MR. FLOYD: Your Honor, we want to make it known to the Court that the sheriff has, this afternoon, become a very material witness on behalf of the State, and it has come to our attention . . . that the sheriff has also acted, at lunchtime, and during break, as bailiff for this jury, and we feel that such circumstances tend to prejudice the rights of this defendant in this trial, and we move for a mistrial . . .

"MR. BLACK: All the sheriff has done is take them out on break.

"MR. MARTIN: He was not excused from the rule and stayed in the courtroom during testimony, and you had a deputy there that was excused from the rule, and we don't think that is proper, and we object to it.

    \*    \*    \*    \*    \*    \*

"COURT: Overruled.

"MR. FLOYD: We except to the Court's ruling."

In Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Supreme Court of the United States held that where officers, who are key witnesses, maintain close and continuous association between themselves and the jury, the defendant is deprived of the right to trial by an impartial jury which the Due Process Clause of the Fourteenth Amendment requires. And, as Justice Holmes stated in Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), in his dissenting opinion,

"Any judge who has sat with juries knows that, in spite of forms, they are extremely likely to be impregnated by the environing atmosphere."

In *Turner* the court stated:

"It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecuting witnesses who were not deputy sheriffs. But the role that Simmons and Rispone played as deputies made the association even more prejudicial."

In *Turner* the motion for mistrial was based on the ground that Simmons and Rispone " 'were in actual charge of the jury; that they were physically present with the jurors in and out of the jury room, in automobiles and in eating places with the jury members, mingling with the jurors * * *.' "

In Miles v. State, 261 Ala. 670, 75 So.2d 479 (1954) the sheriff was one of the officers active in the prosecution of defendant. He was in charge of the jury and took the jury to a cafe to eat during a noon recess. He was permitted to testify in the case as a prosecuting witness. This court held that this was reversible error. In *Miles*, as well as here, there was no testimony of any conversation taking place between the sheriff and members of the jury. Nevertheless, there is the possibility of influence exerted on the jury's verdict by the sheriff.

In Oliver v. State, 232 Ala. 5, 166 So. 615, this court said:

"It is established that in their deliberation the jury should be separated from and uninfluenced by the outside world. Any misconduct that might influence the jury, affect the verdict rendered or the punishment fixed, is a cause for a new trial. The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute."

See also Owens v. Florida, 68 Fla. 154, 67 So. 39 (1914).

We are of the opinion that justice requires another trial free of any probability of injury by association of the sheriff with the jury.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, McCALL, and JONES, JJ., concur.