277 So.2d 912

**Thomas William YELTON, alias**

v.

**STATE.**

**3 Div. 166.**

Court of Criminal Appeals of Alabama.

Feb. 20, 1973.

Rehearing Denied April 3, 1973.

J. Knox Argo, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

The appellant, Thomas William Yelton, alias Bill Yelton, was convicted of murder in the first degree and sentenced to life imprisonment by the Circuit Court of Butler County. From this verdict and judgment, he prosecutes this appeal.

The facts of this case are developed from the following testimony of Joyce Henderson, wife of the deceased, Phillip Henderson:

On December 18, 1971, she and her husband had attended the Opp Jaycee Christmas dance with other Greenville Jaycees, and they returned home around 2:30 A.M. Sunday. While she was in the bathroom dressing for bed, she heard a noise which sounded like a glass breaking, and as she turned around, saw Phillip at the foot of the bed with blood coming out of the right side of his head. Before she could move, appellant was at the bathroom door holding a gun on her and stating, "He is a dead S. O. B., and you are next." Appellant then stated he was taking her to Mars Hill, North Carolina, to kill her. Robed in pajamas and a housecoat, she left the house with him, and they drove through Atlanta and into Greenville, South Carolina, where the appellant threw the gun into a reservoir called Water Shed. Later the appellant stopped in Asheville, North Carolina, for her to purchase some clothes, and they continued on to Marion, Virginia, the home of his parents. Not finding his parents at home, they waited a short while, during which time witness begged appellant to let her call someone at the Police Department in Greenville, Alabama, about her husband. She telephoned from the Holiday Inn to inform the police that Phillip was dead, and they were returning. Upon arriving back in Greenville, Alabama, they were immediately surrounded by police, and appellant was taken into custody.

At the time her husband was killed, Mrs. Henderson stated she had known appellant for approximately seven or eight months. He was formerly a member of the Jaycees, and all of them were friends.

I

The appellant insists that the lower court committed error in permitting the sheriff to have custody of the jury and eat meals with them, particularly since he participated in the investigation and later appeared as a witness for the prosecution.

"It is established that in their deliberation the jury should be separated and uninfluenced by the outside world. Any

misconduct that might influence the jury, affect the verdict rendered or the punishment fixed, is a cause for a new trial. The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute." Oliver v. State, 232 Ala. 5, 166 So. 615.

In the case before us, the sheriff gave testimony concerning evidence he found during an investigation at the scene. During the trial it was shown that he was also present when the appellant made a statement. Upon completion of the trial and before the jury's deliberations, the sheriff was present and talked with jurors during their evening meal.

Although the sheriff's testimony was confined to the evidence found at the scene, his presence with the jury after the trial could have emphasized his testimony and the part he played in the trial.

Any person holding the office of sheriff is not only recognized as the symbol of that county's law, but is the law to his constituents when he speaks. It is for this reason that the testimony of such an officer may influence a jury's verdict, and the impact of his presence is increased considerably whenever he is brought into such close company with the jurors.

In Oliver v. State, supra, a case very much like the one before us, the Alabama Supreme Court stated:

"The association of this witness (Enslen) as special bailiff in control of the jury during the trial and its deliberations, furnished opportunity for ingratiating himself in the minds of the individual jurors, and for unduly emphasizing his testimony given in that case, causing it to affect and enter into the verdict rendered. His constant presence with the jury no doubt had bearing upon the case, though he and the jurors testified that he had not spoken to any individual juror about the evidence in the case or about the defendant. The injury which resulted was no doubt unconsciously brought about, but was none the less real or effective."

In Oliver, supra, our Supreme Court, regarded it absolutely necessary for a fair and impartial trial that the jury be kept free from all outside and improper influences and granted a new trial because the lower court erred in allowing the jury to be in the immediate presence and association of the witness, Enslen, during the trial.

The court spoke on this precise question in Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, and held that the defendant had been denied the right to a fair trial by an impartial jury when two deputies who gave key testimony leading to defendant's conviction had charge of the jury during the three-day trial and had fraternized with them outside the courtroom during the performance of their duties.

The rationale of the court's decision is found in this cogent language:

"And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution."

Even though the sheriff's participation in the instant case did not approach the prohibited behaviour in Turner, supra, nor Oliver, supra, the error lies in allowing any association of the jury with a witness who has testified at the trial. It would un-

dermine the basic guarantees of a jury trial to permit this kind of commingling, between jurors, and any other witness who was in a position of authority. A sheriff should not be placed in a situation where his integrity as a chief law enforcement officer of the county, and as an officer of the court, will be questioned. His testimony should come from the witness stand, unencumbered by any prejudicial suspicions which might occur when he is placed in the immediate presence of the jury.

## II

The appellant also contends it was reversible error for the sheriff to inform the jury as to the possibility of parole in the event the appellant was sentenced to the penitentiary. The alleged error occurred during the meal preceding the jury's deliberation, and the facts surrounding this incident were brought out in the hearing for a new trial.

Lillian Waller, one of the jurors, did not remember when the conversation took place, but she did recall hearing someone ask the sheriff if anybody ever got out on a life sentence. She further testified, "He said it depends, but he wasn't talking about the boy."

Frances Tutchtone, foreman of the jury, talked briefly with the sheriff during supper time, the night of the jury's deliberation. It was rather noisy, and she did not hear real well, but while they were eating, the person on her left asked the sheriff how soon a person could be paroled for a life sentence. His response was, "Well, it depends." Later he remarked, "Well, it depends on their behaviour," and, "Well, the earliest they would ever be considered would be ten years."

The Supreme Court of Alabama held in Lawley v. State, 264 Ala. 283, 87 So.2d 433, that it was prejudicial error for a judge to comment before a jury on the question of defendant's parole. Chief Justice Livingston stated:

"The information could not be eradicated from the minds of the jury. We cannot say that they considered it in arriving at their verdict, but they *might* have done so." (Emphasis ours.)

It is fundamental that a jury's verdict must be based upon the evidence developed at the trial. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L. Ed.2d 654.

This requirement goes to the fundamental integrity of all that is embraced in the constitutional concept of a trial by jury. The jury is an integral part of the court. It is their responsibility to determine the guilt or innocence of the accused. Their deliberation should be conducted in a judicial vacuum free of any contaminants. Whatever evidence is presented against the accused must come from the witness stand and be embraced with the judicial mantel that protects the accused's rights to counsel, confrontation, and cross-examination. *Turner,* supra.

## III

Finally, we address ourselves to one further contention because of the likelihood of it occurring at a new trial. The appellant insists that the court erred in overruling his objection to the following remarks by the District Attorney in his argument:

"MR. BRYAN: They have not caught her in a single story because she has told no story, yet these two prize witnesses can get on that stand and testify that they lied. Who are you going to believe? A local Butler County girl and lady . . .

"MR. ARGO: We object to that, Your Honor. That is highly prejudicial and inflammatory.

"THE COURT: Overruled.

"MR. BRYAN: . . . who grew up in this community or are you going to be-

lieve these Virginians who came here and confess and admit they lied."

We have no doubt from the evidence in the record that both appellant and his mother gave conflicting testimony. In his statement made in the Butler County Jail on December 20, 1971, appellant related facts which he later contradicted at the trial.

At first, Mrs. Yelton, appellant's mother, testified that she saw and talked with her son and Joyce Henderson while they were in Marion, Virginia, on December 20, 1971. Later in the trial, she admitted these statements were not true.

The scope of permissible argument was defined in Johnson v. State, 272 Ala. 633, 133 So.2d 53:

"It is sometimes difficult to draw the line between allowable argument and improper statements in argument. The rule is that an attorney cannot be allowed to state anything as a fact as to which there is no evidence."

Since the quoted remarks of the District Attorney were based on evidence, they did not transgress the bounds of legitimate argument.

Appellant's counsel further argues that the solicitor's statements illustrate sectional bias and prejudice, and cites cases supporting his argument. We do not believe, however, that the remarks in question reach the crescendo of prejudice complained of in those cases.

There is no legal standard by which prejudicial qualities of improper remarks of the District Attorney can be gauged. Each case must be determined on its own merits. Smith v. State, 282 Ala. 268, 210 So.2d 826.

We have treated herein, only those matters of error which could occur at a new trial, and based upon the foregoing reasons, the judgment is due to be reversed.

Reversed and remanded.

All the Judges concur.