851 So.2d 606 (2000)
Ex parte Andy Dwight PIERCE.
(Re: Andy Dwight Pierce v. State).
1981270.
Supreme Court of Alabama.
September 1, 2000.
*607 Ellen L. Wiesner of Cannon & Dunphy, S.C., Brookfield, Wisconsin, for petitioner.
William H. Pryor, Jr., atty. gen.; and George A. Martin, Jr., and Beth Jackson Hughes, asst. attys. gen., for respondent.
Thomas W. Sorrells, Montgomery, for amicus curiae Alabama District Attorneys Association.

On Application For Rehearing
HOOPER, Chief Justice.
The opinion of May 26, 2000, is withdrawn and the following is substituted therefor.
On January 26, 1989, Andy Dwight Pierce was convicted of murder committed during the course of a robbery, and he was sentenced to death by electrocution. His conviction was affirmed on appeal, but the Court of Criminal Appeals remanded the case for resentencing because improper information had been admitted during the sentencing phase of the trial. Pierce v. State, 576 So.2d 236 (Ala.Crim.App.1990). Pierce was resentenced to death, on April 15, 1991. On return to the remand, the Court of Criminal Appeals ordered a hearing to determine whether the prosecution could provide race-neutral reasons for its use of peremptory strikes to exclude blacks from the jury venire. Pierce v. State, 586 So.2d 1005 (Ala.Crim.App.1991). On return to the second remand, the Court of Criminal Appeals held that the prosecution had offered race-neutral reasons for its strikes and that the trial court had properly resentenced Pierce to death. Pierce v. State, 612 So.2d 514 (Ala.Crim. App.1992). This Court affirmed the conviction and the resentencing, Ex parte Pierce, 612 So.2d 516 (Ala.1992), and the United States Supreme Court denied certiorari review, Pierce v. Alabama, 510 U.S. 872, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993). The Court of Criminal Appeals issued a certificate of judgment on February 3, 1993.
On December 2, 1994, Pierce filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. The trial court dismissed several claims, finding that they were procedurally barred by Rule 32.2(a)(2), (3), (4), and (5), Ala. R.Crim. P. After conducting an evidentiary hearing, *608 the trial court entered an order denying Pierce relief on all of his remaining claims. The Court of Criminal Appeals affirmed. Pierce v. State, 851 So.2d 558 (Ala.Crim. App.1999).
This Court granted Pierce's petition for certiorari review, to examine one of Pierce's four claimsthat Sheriff Douglas Whittle had been a key witness for the prosecution and that he had improperly had close and continual contact with the jury throughout the trial. The Court of Criminal Appeals held that this issue was procedurally barred by Rule 32.2(a)(3) and (5) because it was not raised at trial or on direct appeal, and it further held the claim to be without merit. We reverse and remand.

I.
The United States Supreme Court in Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), held that the defendant's right to a fair trial was violated by the fact that two deputy sheriffs who were key witnesses for the prosecution had charge of the jury during the defendant's three-day trial. The Supreme Court stated: "`In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.'" 379 U.S. at 471-72, 85 S.Ct. 546 (quoting Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). In Turner, the jurors were sequestered during a three-day trial. The deputy sheriffs "drove the jurors to a restaurant for each meal, and to their lodgings each night [and] ate with them, conversed with them, and did errands for them." 379 U.S. at 468, 85 S.Ct. 546. The Supreme Court held that this arrangement constituted a close and continual association between the deputy sheriffs and the jurors.
Pierce contends that his due-process rights, including his right to a fair trial, were violated because, he says, Sheriff Whittle, who Pierce claims was a material witness, had substantial association with the jurors during the trial. The Court of Criminal Appeals found that Pierce's claim was without merit because, it said 1) the facts did not support Pierce's claim that Sheriff Whittle had improper close and continual association with the jurors; 2) the record does not show that Sheriff Whittle was a key witness; and 3) Pierce presented no evidence indicating that he was actually prejudiced by any contacts between Sheriff Whittle and the jury. Judge Cobb wrote a concurring opinion in which she agreed with the State's argument that Pierce did not properly raise this issue at trial or on appeal; however, she disagreed with the rest of the main opinion.
The jurors in Pierce's case were sequestered during the trial, which lasted four days for the guilt phase and one day for the sentencing phase. The jurors stayed at the Comfort Inn motel in Enterprise, which is 20 miles from the Geneva County Courthouse. The jurors ate lunch in Geneva at the Chicken Box restaurant and ate breakfast and supper in Enterprise at the Shoney's restaurant. At the Rule 32 evidentiary hearing held by the trial court, more than six years after Pierce's trial, four witnesses testified as to the extent of Sheriff Whittle's contact with the jury. The Court of Criminal Appeals found that the testimony was conflicting and, thus, that the trial court's determination as to the credibility of the evidence must be given great deference. However, we do not find the testimony to be conflicting. We find undisputed evidence indicating *609 the sheriff had close and continual contact with the jury.
Dot Kirkland, the administrative assistant in the sheriff's office, was appointed as a bailiff and was responsible for the jury. Kirkland unequivocally testified that three vehicles were used to transport the jurors during the trial and that she drove her personal van while Sheriff Whittle and Chief Deputy Tice each drove a patrol car. Kirkland further testified that she, the deputy sheriff, and Sheriff Whittle accompanied the jurors to lunch.
Gerald Butler, the foreman of the jury, testified that officials of the Sheriff's Department transported the jurors by cars to their motel; however, Butler did not remember if Sheriff Whittle drove a car. Butler had previously executed an affidavit stating that Sheriff Whittle would "come up to Enterprise in the mornings to make sure everything went smoothly" and that "[t]he State provided everything we needed and the Deputies and Sheriff did a good job." Robert Owens, a juror, testified that he did not remember Sheriff Whittle's driving a car to the motel in Enterprise, but remembered that Sheriff Whittle was sometimes with the jurors at lunch. Keith Brown, the third juror who testified about the jury's contact with Sheriff Whittle, testified that he remembered that Sheriff Whittle went back and forth to Enterprise with the jurors, and Brown thought that Sheriff Whittle drove one of the cars. Brown also said he remembered that Sheriff Whittle went with the jurors to eat lunch.
This testimony does not appear to be conflicting. Each of the witnesses, more than six years after the trial, remembered the sheriff's having contact with the jury. Kirkland, who was in charge of the jury and who would have the most knowledge of the lodging and meal accommodations for the jury, was clear in her testimony that Sheriff Whittle drove one of the cars used to transport the jurors to their motel in Enterprise and that Sheriff Whittle accompanied the jurors to lunch each day. The testimony of the three jurors who testified at the evidentiary hearing supports Kirkland's testimony, even if these three jurors did not ride in a car driven by Sheriff Whittle. The evidence shows that Sheriff Whittle drove jurors in a patrol car 20 miles each way, to and from their motel in Enterprise, each day during the five-day trial. The evidence also indicates that Sheriff Whittle ate lunch with the jurors each day.
The Court of Criminal Appeals states that all of the evidence indicates that Sheriff Whittle did not discuss the facts of the case with the jurors. However, Turner makes it clear that the question whether a witness had close and continual contact with the jury is not dependent upon whether the witness had conversations with the jurors regarding the case:
"It is true that at the time they testified in open court Rispone and Simmons [deputy sheriffs] told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution."
379 U.S. at 473, 85 S.Ct. 546.
In State v. Kelley, 192 W.Va. 124, 451 S.E.2d 425 (1994), the Supreme Court of Appeals of West Virginia held that there was "a reasonable probability that the violation in this case contributed to the conviction," *610 even though the sheriff, who was also a witness, acted simply as a bailiff by bringing the jury in and out of the courtroom and transporting messages between the jury and the court. 192 W.Va. at 130, 451 S.E.2d at 431. In Radford v. State, 263 Ga. 47, 49, 426 S.E.2d 868, 870 (1993), the Supreme Court of Georgia held that a deputy had had "substantial and continuing contact with and authority over" the jurors, even though he did not discuss the case itself with the jurors. In Radford, the deputy's contact consisted of riding with the jurors on the bus that transported them to and from their motel and to meals, eating meals with them, and standing guard at the motel while the jurors congregated.
Precedent from the Court of Criminal Appeals also supports our conclusion that Sheriff Whittle did have a constitutionally unacceptable level of contact with the jury in this case. In Yelton v. State, 50 Ala. App. 168, 170-71, 277 So.2d 912, 915 (Crim.App.1973), the Court of Criminal Appeals held:
"Even though the sheriff's participation in the instant case did not approach the prohibited [behavior] in Turner,... the error lies in allowing any association of the jury with a witness who has testified at the trial. It would undermine the basic guarantees of a jury trial to permit this kind of commingling, between jurors, and any other witness who was in a position of authority. A sheriff should not be placed in a situation where his integrity as a chief law enforcement officer of the county, and as an officer of the court, will be questioned. His testimony should come from the witness stand, unencumbered by any prejudicial suspicions which might occur when he is placed in the immediate presence of the jury."
In Miles v. State, 261 Ala. 670, 75 So.2d 479 (1954), this Court held that a defendant was entitled to a new trial because the sheriff, a deputy sheriff, and a highway patrol officer had walked with the jury to a cafe, had eaten at the same table with the jury, and had walked back to the courthouse with the jury. The amount of contact between the law-enforcement officials and the jury in Miles is not nearly as great as that in the present case, yet this Court held that the possibility of influence exerted on the jury by those three men required a new trial. In Miles, this Court also stated that there was testimony indicating that the officers and the jury had not engaged in any conversation regarding the case; however, that fact was not dispositive.
We conclude that Pierce presented evidence indicating that Sheriff Whittle had a close and continual contact with the jury, and we conclude that that evidence was sufficient to show a violation of the principle of Turner v. Louisiana.
The Court of Criminal Appeals also held that the Turner principle did not apply because, it said, Pierce did not prove that Sheriff Whittle was a key witness in the case. That court based its conclusion on the proposition that Sheriff Whittle's testimony repeated the testimony of other witnesses and that, while Sheriff Whittle testified regarding a statement Pierce had made in the sheriff's presence, Pierce's own testimony at trial was consistent with his previous statements to the police and, thus, the sheriff's testimony was merely cumulative.
We conclude that Sheriff Whittle was in fact a key witness for the State. He was the investigating officer in charge of the case, and he testified as to what Pierce told him during an interrogation; his involvement was similar to the involvement of the sheriff in Yelton. In Yelton, the *611 sheriff gave testimony concerning evidence he found during an investigation at the scene of the crime. He also testified as to a statement made by the defendant. Upon completion of the trial, the sheriff accompanied the jurors and talked with them during supper. The Court of Criminal Appeals stated:
"Although the sheriff's testimony was confined to the evidence found at the scene, his presence with the jury after the trial could have emphasized his testimony and the part he played in the trial.
"Any person holding the office of sheriff is not only recognized as the symbol of that county's law, but is the law to his constituents when he speaks. It is for this reason that the testimony of such an officer may influence a jury's verdict, and the impact of his presence is increased considerably whenever he is brought into such close company with the jurors."
50 Ala.App. at 170, 277 So.2d at 914.
Sheriff Whittle's testimony was not merely cumulative. He recounted the interrogation of Pierce, which occurred in the sheriff's own living quarters at the jail. The sheriff testified about Pierce's story regarding a man Pierce said was named Jim, who, Pierce said, forced Pierce at gunpoint to take the victim's car and who, Pierce said, killed the victim. Pierce testified at trial to these same statements. However, Sheriff Whittle also testified that in his opinion Pierce was lying when he made those statements. Defense counsel tried to elicit from the sheriff testimony indicating that Pierce was cooperative while he was in custody, but the sheriff stated that Pierce was not cooperative during his interrogation because, the sheriff said, he refused to tell the truth. The sheriff's testimony as to Pierce's demeanor during his interrogation also implied that Pierce was lying. Sheriff Whittle further testified that Pierce was the "right man" to arrest for the murder.
This testimony was not cumulative as to that given by other witnesses, and it certainly qualifies as key testimony against Pierce. The prosecution's case was not overwhelming. No physical evidence at the scene connected Pierce to the murder. The police found no fingerprints or hairs belonging to Pierce in the victim's house. They also did not find any of the victim's blood, which had been splattered on the wall, on any of Pierce's clothing. Pierce's defense was that someone else committed the crime. The sheriff specifically stated that this defense was a lie. The sheriff's position as the county's head law-enforcement officer makes his testimony potentially more persuasive than that of other witnesses, particularly when he is also serving as the caretaker of the jury.
The Court of Criminal Appeals also found that Pierce had not shown that he suffered any actual injury by Sheriff Whittle's alleged improper contact with the jury. Three jurors testified that the sheriff's presence, actions, and conversations did not affect their deliberations. However, Pierce need not prove he suffered actual prejudice. As the United States Supreme Court stated in Turner v. Louisiana, 379 U.S. at 473, 85 S.Ct. 546, "it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and ... key witnesses for the prosecution." The Court further stated:
"It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecution witnesses who were not deputy sheriffs. But the role that [the witnesses] played as deputies made the association even more prejudicial. For the relationship was *612 one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial. And Turner's fate depended upon how much confidence the jury placed in these two witnesses."
Id. at 474, 85 S.Ct. 546.
The Court of Criminal Appeals, in stating that Pierce must prove actual prejudice in order to be entitled to relief under Turner, relied on the dissent in Turner. However, based on the main opinion in Turner, we conclude that close and continual contact with the jury by a sheriff who is a key witness for the prosecution is necessarily prejudicial to the defendant. Thus, we conclude that the defendant does not have to show actual prejudice. This Court had written the following even before the United States Supreme Court decided Turner:
"`The association of this witness ... in control of the jury during the trial and its deliberations, furnished opportunity for ingratiating himself in the minds of the individual jurors, and for unduly emphasizing his testimony given in that case, causing it to affect and enter into the verdict rendered. His constant presence with the jury no doubt had bearing upon the case, though he and the jurors testified that he had not spoken to any individual juror about the evidence in the case or about the defendant. The injury which resulted was no doubt unconsciously brought about, but was none the less real or effective.'"
Miles v. State, 261 Ala. at 672, 75 So.2d at 481 (quoting earlier cases). Our conclusion that Sheriff Whittle was a key witness who had improper close and continual contact with the jury is consistent with previous holdings of this Court, as well as holdings in other jurisdictions.

II.
The decisive issue in this case is whether Pierce's claim is procedurally barred under Rule 32.2(a)(3) and (5), Ala.R.Crim.P.
Pierce's claim states a proper ground for relief under Rule 32.1(a) because it states a constitutional violation that would require a new trial. To be entitled to that relief, however, Pierce must avoid the preclusive effect of Rule 32.2(a)(3) and (5); those provisions bar a defendant from presenting in a Rule 32 postconviction petition a claim that could have been raised at trial or on direct appeal. Rule 32.1 provides:
"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
"(a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.
"(b) The court was without jurisdiction to render judgment or to impose sentence.
"(c) The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.
"(d) Petitioner is being held in custody after petitioner's sentence has expired.
"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
"(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by *613 any of those times through the exercise of reasonable diligence;
"(2) The facts are not merely cumulative to other facts that were known;
"(3) The facts do not merely amount to impeachment evidence;
"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.
"(f) The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part."
Rule 32.2 provides:
"(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
"(1) Which may still be raised on direct appeal under the Alabama Rules of Appellate Procedure or by post-trial motion under Rule 24; or
"(2) Which was raised or addressed at trial; or
"(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
"(4) Which was raised or addressed on appeal or in any previous collateral proceeding; or
"(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b)."
The Court of Criminal Appeals stated that Pierce had failed to prove that his evidence regarding the sheriff's improper contact with the jury constituted newly discovered evidence; therefore, it held, the trial court correctly held this claim to be procedurally barred on the basis that it could have been raised at trial or on direct appeal. The Court of Criminal Appeals held that Pierce did not satisfy the following three of the five elements required by Rule 32.1(e), Ala. R.Crim. P.: 1) that the information was not known and could not have been discovered at the time of trial or sentencing or in time to raise it in a posttrial motion; 2) that if the information "had been known at the time of trial or of sentencing, the result probably would have been different"; and 3) that "[t]he facts establish that the [defendant] is innocent of the crime" or that he "should not have received the sentence [he] received."
However, Pierce was not required to prove that this information meets the elements of "newly discovered material facts" under Rule 32.1(e). While the information about Sheriff Whittle's contacts with the jury may be "newly discovered," Pierce does not seek relief under Rule 32.1(e). Pierce does not contend that "[n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court." Rule 32.1(e). Instead, Pierce's claim fits under Rule 32.1(a): "The constitution of the United States or of the State of Alabama requires a new trial...." Rule 32.1(a) states a ground for relief distinct from that stated in Rule 32.1(e). If every defendant had to prove that the facts on which he relies for postconviction relief satisfy the elements of "newly discovered material facts" set out by Rule 32.1(e), then constitutional violations could rarely be raised in a Rule 32 petition, and Rule 32.1(a) would be superfluous for all cases except those in which the defendant could prove innocence. There is a place for this Court to review constitutional violations that could not be discovered by the date of trial or in time to be raised in a direct appeal, even if the defendant is guilty of the crime charged. Furthermore, the application of *614 the requirements of Rule 32.1(e) in cases like Pierce's would impose a nearly impossible standard on a defendant filing a Rule 32 petition. A defendant could rarely, if ever, establish, through the same facts tending to prove that the jury was prejudiced or improperly influenced, that he is innocent of the crime charged. Yet, jury prejudice or improper influence is an important issue for this Court to review.
Rule 32.1(a) is the same provision that allows a defendant to raise an ineffective-assistance-of-counsel claim in a postconviction proceeding. Yet, this Court has never required a defendant alleging ineffective assistance of counsel to meet the elements stated in Rule 32.1(e), particularly the Rule 32.1(e)(5) requirement of showing facts establishing that the defendant is innocent of the crime. Almost never could a defendant meet the requirement of showing that his evidence proving ineffective assistance also proves his innocence.
Although Rule 32.1(e) does not preclude Pierce's claim, Rule 32.2(a)(3) and (5) would preclude Pierce's claim if it could have been raised at trial or on appeal. Pierce argues that his trial counsel could not have known about the sheriff's improper close and continual contact with the jury. Thus, Pierce argues, 1) counsel had no basis for objecting at trial to that contact and 2) because counsel could not object at trial, the record contained no basis upon which to raise the issue on direct appeal from his conviction. The trial judge made comments during the trial indicating that the sheriff would be making arrangements for the jury's hotel stay and for their meals. Specifically, while explaining the sequestration process to the jury, the trial court stated: "Sheriff, where are they staying?" Sheriff Whittle replied: "They are staying at Enterprise at the Comfort Inn." The trial court then stated: "The sheriff will be able to explain that to you and arrangements will be made for you to get to Enterprise to the Comfort Inn." During the trial, the court stated to the jury: "If you will go back with the bailiff, the sheriff will make arrangements for you to get to the motel." The trial court also explained the arrangements for lunch: "If the jury will go back with the bailiff, the Sheriff's Department will make arrangements for you to eat lunch."
The Court of Criminal Appeals held that Pierce should have objected after hearing these statements. However, we do not think these comments were enough to put trial counsel on notice that the sheriff would personally be driving the jurors to their hotel and would be attending meals with them. Pursuant to Ala.Code 1975, § 12-16-10, "it is the duty of the sheriff... to provide for the jurors and the bailiffs or deputy sheriffs in charge of or attending said jury suitable lodging and meals." The comments made by the trial court do nothing more than indicate that the sheriff was responsible for ensuring that these duties were carried out; they do not indicate that the sheriff himself would personally perform them.
The State argues that in order for Pierce to prove that he could not have raised the issue at trial or on direct appeal (as required by Rule 32.2(a)(3) and (5)), he must prove the elements of "newly discovered material facts" stated in Rule 32.1(e), including the requirement that the facts prove his innocence. We disagree.
As previously stated, because Pierce's claim falls under Rule 32.1(a), rather than Rule 32.1(e), the elements of Rule 32.1(e) do not apply. A requirement that a defendant prove those elements would create a nearly impossible standard. Instead, Pierce need only show that his claim could not have been raised at trial or on direct appeal.
*615 The State contends that Pierce failed to carry his burden of proving that this claim was not procedurally barred. The State argues that at the evidentiary hearing Pierce failed to present evidence indicating that his trial counsel did not know these facts at trial and could not have discovered them in time to raise an objection during trial, in a posttrial motion, or on direct appeal.
This case is in an unusual procedural posture. The record indicates that after Pierce filed his Rule 32 petition, the State filed an answer and a "Motion for Partial Dismissal." Pierce's claim regarding improper juror contact with witnesses was encompassed in "Claim F" of the petition. In the "Motion for Partial Dismissal," the State argued that Claim F, which the State described as "juror misconduct" and which encompassed other claims involving the jurors, was procedurally barred by Rule 32.2(a)(2), (a)(3), and (a)(5). The record indicates that the court held a hearing on the "Motion for Partial Dismissal." This hearing was not transcribed and was the subject of a "Motion to Supplement the Record" filed by Pierce. According to the record, that hearing was tape recorded, but the tape recording could not be found.
Pierce and the State entered into a stipulation of facts; that stipulation indicates that at the hearing on the "Motion for Partial Dismissal," the State argued: "[C]ertain claims in the petition should be dismissed pursuant to the procedural bars found in Rule 32.2(a) of the Alabama Rules of Criminal Procedure. The specific claims and the procedural bars that the State of Alabama argued should apply are set forth in the Motion for Partial Dismissal." According to the stipulation of facts, Pierce's counsel "then argued against the State's Motion for Partial Dismissal." The trial court entered an order dated February 13, 1996, stating that it had considered the State's "Motion for Partial Dismissal," and ordering:
"1. Claim A, Claim B, Claim D, Claim H, Claim I and Claim J were raised or could have been raised at trial or on Motion for New Trial or on appeal. These claims are dismissed or procedurally barred pursuant to Rule 32.2(A) [sic] Alabama Rules of Criminal Procedure."
"2. An evidentiary [hearing] will be held on the remaining claims."
Pierce's claim of improper jury contact was one of the "remaining claims" the trial judge mentioned in paragraph 2 of his order. Thus, it appears from the record that the trial court considered arguments as to whether Pierce's claim regarding the sheriff's improper contact with the jury was procedurally barred by Rule 32.2(a) and determined that it was not. At the subsequent Rule 32 evidentiary hearing, Pierce presented evidence only on the merits of the claim and did not present evidence regarding whether the claim could have been raised at trial or on appeal. Pierce contends that that issue had been argued and decided at the hearing on the State's "Motion for Partial Dismissal." However, after the Rule 32 evidentiary hearing, the trial court entered an order holding that Pierce's claim regarding the sheriff's improper contact with the jury was in fact procedurally barred because it could have been raised at trial and on appeal but was not.
The procedural posture of this case causes us to ask the following questions: Did the trial court address Pierce's procedural compliance with respect to this particular claim? If so, why did it not dismiss this claim along with the other claims? If the trial court did not address the procedural aspect, why would the trial judge hold a hearing on the substance of the claim, with witnesses being called, only to *616 later rule that the claim was procedurally barred? Did the trial judge consider the hearing to be an examination of the procedural posture of this case? Would Pierce have known that he should present evidence as to the procedural status of this particular claim when the trial judge had, to all appearances, finalized the procedural issues with respect to that claim, as it had with respect to all other claims? Did the trial judge, in fact, determine that Pierce's trial counsel should have known, or did know, that the sheriff would have extensive contact with the jury? This Court would like to know whether the trial court would hold this claim barred after Pierce had been given notice that he must present evidence as to his procedural compliance. If he can show to the trial court that he complied procedurally with respect to this particular claim, this Court would then like to know whether the trial court in fact finds that Pierce's attorney did know or should have known of the sheriff's contact with the jury during the trial. Pierce contends that he could not have raised the issue at trial or on appeal because his trial counsel could not have known who was accompanying the jurors to their hotel and to meals. The sheriff did not act as the official bailiff in the courtroom. The official bailiffs did not act as witnesses in the case and would have been, therefore, unobjectionable as escorts for the jury. The sheriff attended to the jurors outside the courtroom, where trial counsel had no opportunity to view his close and continual contact.
When Pierce filed his Rule 32 petition, he was relying on the Court of Criminal Appeals' opinion in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992), which held that a Rule 32 petitioner's claim alleging a juror's misconduct in failing to truthfully answer questions on voir dire examination was not procedurally barred by Rule 32.2, where defense counsel was not aware of the juror's failure to truthfully answer until one week before the court conducted the evidentiary hearing on the defendant's Rule 32 petition.[1] In Freeman, the defendant's counsel uncovered the information during juror interviews. Thus, the Court of Criminal Appeals held that the issue was not procedurally barred because "the fact that the juror had been a policeman [that fact was the information withheld] was not known at the time of trial or at the time of direct appeal." 605 So.2d at 1259.
Similarly, in Pierce's case, during postconviction investigation, Pierce's current counsel interviewed jurors and discovered the improper contact Sheriff Whittle had had with the jurors. Based on the Court of Criminal Appeals' opinion in Freeman, Pierce's claim was cognizable as long as he established that the information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal. Pierce argued to the trial court, in his response to the State's contention that the issue was procedurally barred, that, on the authority of Freeman, the issue could not be barred, because the information was not available to trial counsel and could not have been obtained at the time of the trial. However, what is unclear from the record is whether Pierce met his burden under Rule 32.3 of disproving the existence of the ground of preclusion by a preponderance of the evidence. Because the hearing at which the trial court heard evidence regarding *617 the grounds of preclusion was not transcribed, we cannot say whether this burden was met. The trial court's order following that hearing indicates that Pierce had proved that his claim was not procedurally barred. The trial court's order following the Rule 32 evidentiary hearing indicates otherwise. The ambiguity of these two orders creates a question in this Court's mind as to whether Pierce had the opportunity to adequately present evidence showing he had met his burden under Rule 32.3.
For these reasons, we remand this case for the Court of Criminal Appeals to remand to the trial court for an evidentiary hearing on the question whether Pierce's claim could have been raised at trial or on appeal and is thus barred pursuant to Rule 32.2(a)(3) or (a)(5). The trial court shall file a return to the remand within 60 days; the return shall include a transcript of the proceedings conducted and the trial court's findings of fact and conclusions of law. The Court of Criminal Appeals shall transmit that return to this Court.

III.
Finally, Pierce argues, in the alternative, that his trial counsel was ineffective for not objecting to the sheriff's close and continual contact with the jury. From the record before us, it does not appear that Pierce's trial counsel had information from which he should have known the extent of the sheriff's contact with the jury. The simple fact that counsel knew that the Sheriff's Department was responsible, by statute and at the direction of the trial court, for "making arrangements" for the jury's needs does not mean that counsel should have known that the sheriff would be personally driving the jurors and accompanying them to lunch. However, the evidentiary hearing held on remand should indicate whether trial counsel knew or should have known about the sheriff's contact with the jury. Therefore, we do not foreclose the possibility that Pierce may have a cognizable claim for ineffective assistance of counsel.
APPLICATION GRANTED; OPINION OF MAY 26, 2000, WITHDRAWN; OPINION SUBSTITUTED; REMANDED WITH INSTRUCTIONS.
HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
MADDOX, J., concurs in the result.
SEE, J., concurs in granting the application for rehearing; and concurs in part, concurs in the result in part, and dissents in part.
BROWN, J.,[*] recuses herself.
SEE, Justice (concurring in the order granting the application for rehearing; concurring in part; concurring in the result in part; and dissenting in part).
I concur in the order granting the application for rehearing. However, I disagree with the conclusion that "Sheriff Whittle was a key witness who had improper close and continual contact with the jury." 851 So.2d at 612. Thus, I dissent from Part I. I concur in Part II., and I concur in the result to remand the case with instructions.
NOTES
[1] After the trial court held its hearing on Pierce's Rule 32 petition, the Court of Criminal Appeals overruled its holding in Freeman. It did that in Brown v. State, 807 So.2d 1 (Ala.Crim.App.1999), a case in which this Court has granted certiorari review (docket no. 1990344).
[*] Justice Brown was a member of the Court of Criminal Appeals when that Court considered this case.