MURDOCK, Justice.
 

 James A. Harrison, Jr., petitioned this Court for a writ of certiorari to review whether the Court of Criminal Appeals erred in affirming the Russell Circuit Court’s denial of his Rule 32, Ala. R.Crim. P., petition for postconviction relief as to Harrison’s claims of juror misconduct on the ground that those claims were precluded under Rule 32.2(a)(3) and (5), Ala. R.Crim. P. We issued the writ of certiora-ri to review only whether the unpublished-memorandum affirmance by the Court of Criminal Appeals as to that issue conflicts with this Court’s decision in
 
 Ex parte Burgess,
 
 21 So.3d 746 (Ala.2008). For the reasons discussed below, we hold that Harrison’s juror-misconduct claims are not precluded, and we reverse the judgment of the Court of Criminal Appeals.
 

 I. Facts and Procedural History
 

 In 2000, Harrison was convicted of murder made capital because it was committed during the course of a robbery in the first degree.
 
 See
 
 Ala.Code 1975, § 13A-
 
 *987
 
 5-40(a)(2). The victim, Thomas Fred Day, Jr., was a handicapped individual who had suffered brain damage and permanent damage to one arm as the result of an industrial accident. The jury recommended by a vote of 11-1 that Harrison be sentenced to death; the trial judge accepted the jury’s recommendation and sentenced Harrison to death. Harrison’s conviction and sentence were affirmed on direct appeal.
 
 See Harrison v. State,
 
 869 So.2d 509 (Ala.Crim.App.2002),
 
 cert. denied,
 
 869 So.2d 529 (Ala.2003) (note from reporter of decisions),
 
 cert. denied, Harrison v. Alabama,
 
 540 U.S. 1113, 124 S.Ct. 1042, 157 L.Ed.2d 902 (2004).
 

 ’ In July 2004, Harrison filed the present Rule 32, Ala. R.Crim. P., petition. After the State filed its response, Harrison filed an amended petition. The State then filed an answer to and a motion to dismiss the amended petition. In pertinent part, Harrison’s petition as amended alleged that two jurors had failed to provide accurate answers to questions propounded during the voir dire examination and that their failure to do so amounted to juror misconduct that entitled Harrison to a new trial.
 

 Harrison’s Rule 32 petition alleged that juror A.T.P. failed to respond to four questions propounded by the trial court during voir dire and that she should have responded affirmatively to all four questions. Upon learning of Harrison’s allegations, A.T.P. submitted an affidavit to the trial court; she confirmed some of Harrison’s allegations and attempted to explain why she had failed to respond to each question.
 

 As for the voir dire questions at issue, the trial court first asked the members of the jury venire: “Is there any member of the jury [who has been] or [has] had an immediate family member who was the victim of a robbery, and a robbery is a situation where someone uses force or threatens the immediate use of force to take property from your person?” A.T.P. failed to respond to the question. Harrison alleged, and A.T.P. confirmed in her affidavit, that she had been the victim of three separate robberies in 1994,1997, and 1999, all of which occurred at her place of employment in Georgia.
 

 Harrison alleged in his Rule 32 petition that
 

 “[i]n all three robberies, the perpetrator placed a gun to [A.T.P.’s] head and demanded that she empty the cash register. The robberies scarred [A.T.P.] so severely that she needed her husband to switch work shifts from night to day for fear of being left alone at night. After the first robbery, [A.T.P.] stayed out of work for several weeks as a result of the trauma. A.T.P. ultimately testified as a witness in the trial for the first robbery/[
 
 1
 
 ] and the defendant was convicted.”
 

 A.T.P. stated in her affidavit that the reason she did not respond to the trial court’s question as to whether she had been the victim of a robbery was that she “thought [the court] was asking if we had been a victim in Alabama.” She also stated that the fact that she had been a victim of robberies “in no way affected my verdict in the guilt phase or the penalty phase of Harrison’s trial.”
 

 Second, the trial court asked the members of the jury venire:
 

 “Has any member of the jury been indicted within the last 12 months for a felony offense or for the offense of murder with which the Defendant is charged? And a felony offense is de
 
 *988
 
 fined as a crime involving punishment in the penitentiary for not less than one year and one day.”
 

 A.T.P. failed to respond to the question. Harrison alleged in his Rule 32 petition that “[o]n July 20, 2000, only one month prior to Mr. Harrison’s trial, a Muscogee County[, Georgia,] judge accepted A.T.P.’s guilty plea to six counts of financial transaction card fraud, punishable by up to twelve years in prison.” Copies of the court records of these charges, certified by Muscogee County, Georgia, court officials and attached as an exhibit to A.T.P.’s affidavit, show that the charges were filed on May 22, 2000.
 
 [2]
 

 A.T.P. stated in her affidavit that she “did not remember that the charges had been filed within 12 months of Harrison’s trial,” that she “was not aware, or had forgotten, that the charges were felony offenses,” and that she was “given first offender treatment.” A.T.P. stated that she “did not plead guilty” and that she was “placed on probation, ordered to pay a fíne, and ordered to perform some community service” as a result of the charges. She also explained that she was
 

 “told by someone at the pardons and parole office, [whose] name I cannot remember, that I was not convicted of a felony and, if asked, could say I was not convicted of a felony. Because I had settled those cases, I did not think about them while being questioned by [the court] and the attorneys for Harrison and the State.”
 

 As she did with respect to the issue whether she had ever been a robbery victim, A.T.P. stated in her affidavit that the charges in no way affected her deliberations as a juror in Harrison’s trial.
 

 Third, the trial court asked the members of the jury venire: “[H]ave you been prosecuted or had an immediate family member that’s been prosecuted in a legal matter in the past by the District Attorney’s office?” A.T.P. failed to respond to the question. Harrison alleged in his Rule 32 petition, and A.T.P. confirmed in her affidavit, that “her half-brother had been prosecuted for shooting his wife and had been incarcerated for the crime.”
 

 A.T.P. explained in her affidavit that she did not respond to this question because the shooting “occurred in 1972 or 1973 when I was six or seven years old.” She stated that she had “no personal knowledge of what happened] and, at the time of Harrison’s trial, had not thought about it in a number of years.” A.T.P. stated that the prosecution and conviction of her half-brother did not affect her deliberations as a juror in Harrison’s trial.
 

 Fourth, the trial court asked the members of the jury venire: “Is there any member of the jury who has been represented by the District Attorney’s office in the past in some sort of legal matter?” A.T.P. failed to respond to the question. Harrison alleged in his Rule 32 petition that A.T.P. had failed to disclose that the district attorney “had worked with [A.T.P.’s] husband in seeking child support.”
 

 A.T.P. stated in her affidavit that the assistance her husband received in a child-support matter from the district attorney “occurred before he and I were married.” She stated that she “knew he had gotten some legal help collecting child support” but that she “did not know it [came] from the district attorney’s office.” A.T.P. ex
 
 *989
 
 plained that she never accompanied her husband to court or to the district attorney’s office regarding the child-support matter. A.T.P. stated that even if she had known that the district attorney had helped her husband, it would not have affected her deliberations as a juror in Harrison’s trial.
 

 Harrison also alleged in his Rule 32 petition that juror H.W.’s responses to questions posed by Harrison’s attorney during the voir dire examination were inaccurate. Specifically, the following colloquy occurred between Harrison’s attorney and juror H.W. during voir dire:
 

 “MR. COLLINS: Have you ever served on a jury?
 

 “[H.W.]: Yeah.
 

 “MR. COLLINS: When was that?
 

 “[H.W.]: Last year. But that was penny-ante stuff, stealing. I never [got] called, but I came up here every morning.
 

 “MR. COLLINS: Just like this?
 

 “[H.W.]: Yeah.
 

 “MR. COLLINS: But you never got picked?
 

 “[H.W.]: Yeah.
 

 “MR. Collins: So you never have actually served on a jury?
 

 “[H.W.]: No.”
 

 Harrison alleged in his Rule 32 petition that H.W. “had actually sat on three juries prior to Mr. Harrison’s case, one of which involved a defendant who was convicted of burglary and sentenced to jail. In all three cases, the defendants were found guilty.” H.W. did not submit an affidavit.
 

 In August 2006, the court summarily dismissed Harrison’s amended Rule 32 petition. On appeal, the Court of Criminal Appeals, in an unpublished memorandum, affirmed the trial court’s denial of Harrison’s Rule 32 petition.
 
 Harrison v. State
 
 (No. CR-05-2411), 14 So.3d 197 (Ala.Crim.App.2007) (table). As to Harrison’s claims of juror misconduct, that court stated in its unpublished memorandum that a claim of juror misconduct that rises to the level of a constitutional violation
 

 “does not have to meet the requirements of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P., but the petitioner must show that ‘the information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for a new trial or on appeal.’
 
 Ex parte Pierce,
 
 851 So.2d 606, 616 (Ala.2000). The trial court found that Harrison’s counsel interviewed at least one juror prior to sentencing and that Harrison did not show why any alleged misconduct that was not already known to him could not have been discovered at that time. Harrison’s reliance on
 
 [Ex parte Dobyne,
 
 805 So.2d 763 (Ala.2001),] is misplaced. In both
 
 Dobyne
 
 and
 
 Pierce,
 
 the trial court erroneously applied the Rule 32.1(e) requirements to a Rule 32.1(a) claim.
 
 Pierce
 
 was remanded to the trial court for consideration under the correct requirements, but remand was not required in
 
 Dobyne
 
 because the trial court had made an alternative finding that the appellant’s claims lacked merit.
 

 “... Harrison has not shown that the trial court erred in finding that his juror-misconduct claims were procedurally barred.”
 

 Harrison then petitioned this Court for certiorari review of the decision of the Court of Criminal Appeals. We granted the writ to consider whether the decision of the Court of Criminal Appeals conflicts with
 
 Ex parte Burgess,
 
 21 So.3d 746 (Ala.2008).
 

 II. Standard of Review
 

 “‘This Court reviews pure questions of law in criminal cases de novo.’ ”
 
 *990
 

 Ex parte Morrow,
 
 915 So.2d 539, 541 (Ala.2004) (quoting
 
 Ex parte Key,
 
 890 So.2d 1056, 1059 (Ala.2003)).
 

 III. Analysis
 

 The Court of Criminal Appeals agreed with the trial court that Harrison had failed to demonstrate why any alleged juror misconduct was not known to him or could not have been discovered by him prior to his sentencing, noting that his counsel had interviewed at least one juror before Harrison was sentenced. In
 
 Burgess,
 
 however, this Court reversed a decision by the Court of Criminal Appeals that was based on reasoning similar to that court’s reasoning here.
 

 We explained in
 
 Burgess:
 

 “Burgess reasonably expected that potential jurors answered accurately the questions posed to them during the voir dire examination.
 
 It is unreasonable to hold that a defendant must uncover any and all juror misconduct in the form of inaccurate responses to voir dire examination in time to raise such claims in a motion for a new trial or on appeal. Requiring a defendant to raise such claims of juror misconduct during the interval between the voir dire examination and the filing of posttrial motions places an impracticable burden on defendants. In this case, there is no evidence before us indicating that Burgess suspected or should have suspected that any jurors did not accurately answer a question during the voir dire examination ....
 

 “The trial court, in finding that Burgess’s claims were procedurally barred by Rule 32.2(a)(3) and (a)(5), found ‘that the information obtained from the jurors was available to newly appointed appellate counsel and could have been raised in [Burgess’s] Motion for New Trial. All counsel had to do was to interview the jurors in post-trial interviews just as was done by petitioner’s counsel herein.’ However,
 
 it is unreasonable to require that a defendant, unaware of any failure to answer correctly questions posed during the voir dire examination, must contact each juror and ask whether he or she accurately and truthfully answered such questions.
 
 Jury service is sufficiently disruptive of a citizen’s regular activities without this Court announcing a rule that would routinely subject jurors to potentially insulting postver-dict interrogation concerning their veracity. Absent any evidence that a telephone call to some or all the jurors would have been nothing more than a mere fishing expedition, we cannot hold on this record that Burgess’s claims are precluded.”
 

 Burgess,
 
 21 So.3d at 754-55 (emphasis added).
 

 The State acknowledges this Court’s holding in
 
 Burgess.
 
 The State contends, however, that Harrison failed to explain in his Rule 32 petition why he could not have reasonably discovered the alleged juror misconduct in time to assert that claim in his motion for a new trial or on appeal.
 

 As we indicated in
 
 Burgess,
 
 however, the very nature of juror misconduct is such that a defendant typically will not be aware that there is any misconduct to be discovered. Placing a requirement on a defendant to uncover any and all possible juror misconduct without reason to know what type of misconduct the defendant might be looking for or, in fact, whether any misconduct occurred, would require criminal defendants to embark on a broad-ranging fishing expedition at the conclusion of every criminal trial or waive the right to complain of any juror misconduct the defendant might ultimately discover. Moreover, when it comes to voir dire examination of jurors, the defendant has ev
 
 *991
 
 ery right to expect that jurors will provide truthful and accurate responses.
 
 [3]
 
 “ ‘[V]oir dire’ [is] an ancient phrase which literally means ‘to speak the truth.’ ” 6 Wayne R. LaFave et al.,
 
 Criminal Procedure
 
 § 22.3(a) (3d. ed. 2007). As the Court of Criminal Appeals observed in
 
 State v. Freeman,
 
 605 So.2d 1258, 1259 (Ala.Crim.App.1992): “It is fundamental to our system of impartial justice that “‘[pjarties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.” ’ ” (quoting
 
 Ex parte O’Leary,
 
 438 So.2d 1372, 1373 (Ala.1983), quoting in turn
 
 Ex parte O’Leary,
 
 417 So.2d 232, 240 (Ala.1982)). As in
 
 Burgess,
 
 there is no evidence in the record indicating that Harrison should have been aware before he filed his motion for a new trial or his direct appeal that some jurors had provided untruthful or inaccurate answers during voir dire examination.
 

 Based on the foregoing, we conclude that Harrison’s claims in his Rule 32 petition that two jurors failed to answer accurately questions posed to them during the voir dire examination are not precluded. We therefore reverse the judgment of the Court of Criminal Appeals and remand this case for that court, in turn, to remand it to the trial court for an evidentiary hearing on the merits of Harrison’s juror-misconduct claims and a determination as to whether Harrison is entitled to a new trial.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
 

 SHAW, J., recuses himself.
 
 *
 

 [1]
 

 . A.T.P. confirmed in her affidavit that she testified as a witness in one of the robbery trials.
 

 [2]
 

 . A.T.P. pleaded guilty to all six charges. She received a two-year sentence on each of the six charges, some of the sentences to be served concurrently and some to be served consecutively. The sentences were suspended pending completion of four years of probation.
 

 [3]
 

 . See, e.g.,
 
 Tomlin v. State,
 
 695 So.2d 157, 169 (Ala.Crim.App.1996) (observing that " ‘[i]t is fundamental to our system of impartial justice that " '[pjarties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.’ ” ’
 
 State v. Freeman,
 
 605 So.2d 1258, 1259 (Ala.Crim.App.1992) (quoting
 
 Ex parte O'Leary,
 
 438 So.2d 1372, 1373 (Ala.1983), quoting in turn
 
 Ex parte O’Leary,
 
 417 So.2d 232, 240 (Ala.1982)). 'Voir dire’ is an ancient phrase which literally means ‘to speak the truth.' W. LaFave & J. Israel,
 
 Criminal Procedure
 
 § 22.3(a) (2d. ed. 1992).”).